MARY M. ARNOLD, Defendant in Error, vs. WILLIAM E. DODSON, Plaintiff in Error.

*Opinion filed February 16, 1916—Rehearing denied April 6, 1916.*

1. ASSUMPSIT—*when action of assumpsit will lie.* An action of assumpsit will lie for money had and received for the use of the plaintiff, wherever, by means of the contract relation, the defendant has obtained money which in justice he ought to return.

2. SAME—*when a party may waive the tort and sue in assumpsit.* If there is privity existing between the parties in relation to money sought to be recovered and the money has been received by the defendant by means of fraud or fraudulent practices, the defrauded person may rescind the contract, return the consideration, waive the tort and sue in assumpsit.

3. SAME—*money paid defendant for worthless stock upon his fraudulent representations may be recovered in assumpsit.* Money obtained by the defendant from the plaintiff for worthless shares of stock which the defendant falsely represented were of value may be recovered in an action of assumpsit.

4. SAME—*in assumpsit it is not necessary to allege, in terms, a waiver of the tort.* Where the action is assumpsit it is proper to allege the facts which constitute a tort, and it is not necessary to allege, in terms, a waiver of the tort.

5. SAME—*when claim for damages is in assumpsit and not in tort.* Where one is induced by the false representations of another to make a loan to a certain corporation, any claim against such person for resulting damages would be in tort and not in assumpsit if the corporation, and not such person, received the money; but if such person thereafter represents that the corporation has paid the loan to him and induces the other party to buy from him some worthless stock in another corporation to the extent of the amount of the original loan, the claim against him for the latter tort may be waived and a recovery be had in assumpsit.

6. BILLS OF EXCEPTIONS—*recital in the record by the clerk can not overcome what appears in bill of exceptions.* A recital by the clerk of the trial court that the instructions in the case were given orally cannot be received to overcome the recitals of the bill of exceptions showing that the attorneys handed the instructions to the judge, that the judge stated he would mark them given or refused, that the instructions so handed to him were read to the jury, and that they were separate and distinct statements of the law and were separately numbered.

7. PLEADING—*statement in municipal court need not allege implied promise to pay.* In the municipal court of Chicago one who elects to waive a tort and sue in assumpsit need only state the facts which will sustain the cause of action and need not allege the fiction of a promise implied by law.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. JOHN D. TURNBAUGH, Judge, presiding.

CHARLES H. ALDRICH, for plaintiff in error.

DAVID K. TONE, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The Appellate Court for the First District affirmed a judgment for $8856.54 recovered in the municipal court of Chicago by the defendant in error, Mary M. Arnold, against the plaintiff in error, William E. Dodson, and a writ of *certiorari* was granted to bring the record here for a review of the judgment of the Appellate Court.

The principal question is whether the municipal court had jurisdiction of the cause of action. The amount claimed exceeded $1000, and if the claim was in tort the court had no jurisdiction. If the claim stated by the plaintiff and proved at the trial was in assumpsit the court had jurisdiction.

The amended statement of claim alleged that on or about November 6, 1911, the plaintiff purchased from the defendant 350 shares of the capital stock of the National Machine Recorder Company, for which she paid him $3150; that on or about July 18, 1912, the plaintiff purchased 300 additional shares of the stock of the corporation for the sum of $1600, which she paid to the defendant; that the defendant induced her to purchase the stock by falsely and fraud-

ulently representing that the machines manufactured by the
National Machine Recorder Company were beyond the ex-
perimental stage and had been perfected; that the corpo-
ration for about a year had been manufacturing and selling
nine machines a day at $900 each; that the International
Harvester Company had purchased a number of the ma-
chines and was well satisfied with them; that the corpora-
tion was then earning large profits and dividends on the
stock by selling its machines; that he had invested $500,000
of his own money in the stock,—practically everything he
had; that in his opinion the company would make a divi-
dend of 125 per cent a year on its entire capital stock, based
upon what the company had been doing up to that time;
that before the second purchase of the 300 shares the de-
fendant represented to her that the dividends and money
that the corporation had made prior thereto in the sale of
its machines were being used in making repairs and install-
ing the unit system; that the corporation had a lot of
money in the bank and it was making money and in a short
time dividends would be paid on the stock; that at the time
the second purchase was made the defendant represented
that the money the corporation had made was being ex-
pended in enlarging its plant to take care of its increasing
business, and that English capitalists had offered $1,500,000
for a right to manufacture the machines in foreign coun-
tries. The plaintiff alleged that each and all of the state-
ments so made were false and known by the defendant to
be false when made, and that she believed the statements to
be true and relied upon them and was thereby induced to
purchase the stock. The amended complaint then alleged
that on March 1, 1912, the plaintiff was induced to turn
over to the defendant $5000 as a loan to the Universal Mo-
tor Company on a note due in sixty days, secured by 10,000
shares of the capital stock of the corporation and a bill of
sale of two motor trucks; that he induced her to loan the
money by falsely and fraudulently stating that the stock of

the corporation had been nearly all subscribed for by responsible people; that the corporation had a factory where it was manufacturing motor trucks and that it was a responsible concern, all of which statements were false and known by the defendant to be false when made by him and relied on by the plaintiff; that on or about August 28, 1912, the defendant stated to the plaintiff that he had collected the $5000 from the Universal Motor Company, and the plaintiff then purchased from the defendant $5000, in par value, of the stock of the United Motor Equipment Company; that she was induced to purchase that stock by false and fraudulent statements of the defendant that the stock of the corporation was all owned by his own family and one or two intimate friends; that $50,000 had been paid into the corporation on account of the stock, which was all the money the corporation needed to exploit its invention; that the company would not sell any more stock to anyone; that a man had offered to pay the defendant $50,000 for $50,000, in par value, of the stock and the defendant had refused to sell it; that the company was the owner of a patented invention of an automobile starter and owned a factory on the north side and was ready to manufacture automobile starters, and the plaintiff would make a profit of at least thirty per cent a month on the $5000; that he offered to give her the stock in consideration of the surrender and payment of the $5000 promissory note of the Universal Motor Company, and that the plaintiff, relying upon said statements, took the 500 shares of stock in payment of the promissory note. It was then alleged that on or about August 3, 1913, the plaintiff discovered that all of the foregoing statements by which she was induced to purchase from the defendant stock in the National Machine Recorder Company and in the United Motor Equipment Company were false, and that she then tendered to the defendant all the foregoing shares of stock and demanded a return to her of the sums of money paid him for the same.

An action of assumpsit will lie for money had and received for the use of the plaintiff wherever, by means of a contract relation, the defendant has obtained possession of money which in justice he ought to refund. If there is privity existing between the parties in relation to the money sought to be recovered and the money has been received by the defendant by means of fraud or fraudulent practices, the defrauded person may rescind the contract, return the consideration, waive the tort and sue in assumpsit. (*Citizens' Gaslight and Heating Co.* v. *Granger & Co.* 118 Ill. 266; *Drennan* v. *Bunn,* 124 id. 175; *May* v. *Disconto Gesellschaft,* 211 id. 310; 2 R. C. L. 759.) The statement alleged purchases of worthless stocks induced by frauds of the defendant, the receipt of money by him for the stocks, a disaffirmance of the transactions and a demand for the money. Proof of the frauds and disaffirmance would make the defendant liable to compensate the plaintiff in damages for the wrongs or create a promise implied by law to refund the money. The alleged demand for the money was an election to enforce the promise inferred by law. A plaintiff cannot waive a tort and declare in assumpsit for money had and received unless money has actually been received by the defendant, but under that rule there can be no doubt that, so far as the first purchase of 350 shares for which she paid the defendant $3150 is concerned, the amended statement of claim set forth a good cause of action in assumpsit. That is also true of the statement concerning the second purchase of 300 shares, for which the plaintiff alleged that she paid the defendant $1,600. Where the action is assumpsit it is proper to allege the facts which constitute a tort and not necessary to allege, in terms, a waiver of the tort. (5 Corpus Juris, 1399.) As to the last purchase, the statement recited that the defendant induced the plaintiff, by means of false and fraudulent representations, to make a loan of $5000 to a corporation, and if there had been resulting damage the action for such damage would

have been in tort, because it appeared that the defendant acted as an agent and personally received nothing. But the plaintiff was not seeking to recover any loss by that loan. She alleged that the defendant told her he had collected the note, and if so, the money received by him was money belonging to her in his hands. The defendant having informed the plaintiff that the note had been paid to him, the corporation was entitled to the note with the collateral and the bill of sale of the trucks. When the plaintiff gave the defendant the note and collateral and bill of sale she did no more than she was required to do upon his statement that the note had been paid to him. The defendant then retained the $5000 in his hands belonging to the plaintiff in payment for the stock of the United Motor Equipment Company. The allegation, therefore, was that the defendant had received $5000 of the plaintiff's money for which he had given her worthless stock, and it was for that $5000 that she sued. By the common law system of pleading, if a suit in assumpsit was not on an instrument containing a promise to pay, the declaration was required to allege the promise which the law implied, but a failure could only be reached by special demurrer. (*Massachusetts Mutual Life Ins. Co.* v. *Kellogg,* 82 Ill. 614.) In the municipal court it was only necessary to state facts which would sustain the cause of action, without alleging the fiction of a promise implied by law. The claim stated was not for tort but in assumpsit, and the municipal court had jurisdiction of that form of action.

The cause of action proved at the trial was of the same nature. The only denial made by the defendant in his affidavit of merits was that the plaintiff made the purchase of the stock relying upon the representations set out in the amended statement or that he made or authorized others to make the representations or any of them. He alleged that when the plaintiff applied to purchase the stock he told her that he did not wish to deal with a woman, but

she represented herself as a business woman of large experience and was told to make her own investigations regarding the machine recorder stock, which she did, and that only after such investigation did she purchase the stock. At the trial the defense relied upon was that the defendant did not make the false representations. If made they were false, since the corporations had no property of any particular value and derived no income from their business. The only property the machine recorder corporation ever had was a patent and some experimental machines, and it had never sold any. The stocks were worthless, and were manipulated by the defendant, his brother and his agent for the purpose of selling the stocks. The evidence for the plaintiff was that the defendant made the representations about the number of machines sold at $900 each and that it only cost $150 to make one, when, in fact, the corporation had never sold any. It appeared on the trial that the 300 shares of stock were purchased from T. J. Ament and the defendant acted only as agent. That claim was rejected by the jury, and the verdict was for the amounts which the defendant himself received in his own right for the stock purchased from him. The representations, if made, were false, and that they were made is settled by the affirmance of the judgment by the Appellate Court. The recovery was in assumpsit and not for a tort.

Errors were assigned in the Appellate Court on the giving of instructions at the request of the plaintiff, and they have been assigned in this court. The Appellate Court was of the opinion that the defendant could not be heard to object to the instructions because he failed to comply with rule 8 of the municipal court, which was preserved in the record. That rule is, that "objections to giving or refusing of oral instructions to the jury must be specific, and must be made immediately upon the conclusion of the charge, before the jury retires." To sustain the position taken by the Appellate Court an additional abstract of the record

has been filed, containing the statement by the clerk of the court that the instructions were given orally. The clerk was not authorized to make such a statement and could not make it a part of the record. Where there is a trial by jury, which continues until a verdict is returned, the occurrences on the trial from the time the jury are sworn until the verdict is returned are matters for a bill of exceptions and can only be made a part of the record by that means. Even if it had been a part of the record proper, the bill of exceptions signed by the judge will prevail over anything written by the clerk, as held in *Long* v. *Linn,* 71 Ill. 152, where the record as certified by the clerk gave the verdict of the jury differently from that copied into the bill of exceptions and certified to by the judge. Instructions become a part of the record only when preserved in the bill of exceptions, and a recital made by the clerk in the record can not prevail against what is shown in opposition to it in the bill of exceptions. (*Indiana, Decatur and Western Railway Co.* v. *Hendrian,* 190 Ill. 501.) In this case the bill of exceptions shows that the attorneys handed the instructions to the court; that the court stated that he would mark them given or refused, and the instructions so handed to him were read to the jury. The instructions show that they did not constitute an oral charge, as they are not written in such manner or form as a court would use in an oral charge, and they were separate and distinct statements of law and separately numbered. The bill of exceptions further shows that the defendant specified particular objections to the instructions before they were read to the jury and before the jury retired. The defendant did not forfeit his right to assign error on the giving of instructions.

The objection to the instruction numbered 1 is that it invaded the province of the jury by assuming the existence of controverted facts, and particularly that it assumed that the defendant made the statements which he was charged to have made. The instruction informed the jury that if

they found, from the preponderance of the evidence, the facts therein stated, which were the same facts alleged in the statement of claim relating to the purchase of the 350 shares and detailed in the instruction, and they further believed, from the evidence, that before the stock was purchased the defendant made the various statements recited in the instruction, which were the same contained in the statement of claim, and if the jury further believed, from the preponderance of the evidence, that the statements were false and untrue and that the defendant knew that the statements were false and untrue at the time that he made such statements, and if they further believed, from the evidence, other facts therein stated, the plaintiff was entitled to recover the $3150 paid, together with interest. It will be seen that there was no assumption by the court of any fact, but the requirement to find the fact from the evidence was repeated six times in that single instruction. The same objection is made to the second instruction, which related to the purchase of 300 shares of stock, and while it is not subject to the objection, the jury rejected that claim, and if it had assumed any fact no harm was done.

It is argued against the instructions that some of the things recited in them were in the nature of opinion and prophecy as to what the stock would yield, which, alone, would not justify or support an action, and that the jury might have based their verdict on a finding that such statements were made by the defendant. It is true that some of the facts stated in the instructions were of the nature claimed, but the instructions only authorized a verdict upon finding that all of the false statements were made, and the jury could not, under them, have based a verdict on a finding as to matters of opinion or expectation.

On the trial the defendant offered to return to the plaintiff the note and collateral and the bill of sale of the two motor trucks. His attorney said that he had been told that one of the trucks was in use in Chicago, but he did not

272 — 25

know the fact and did not know anything about the other truck. The plaintiff offered to take the note and collateral and the motor trucks, if they would produce them, of the value of $12,000, which the testimony showed the defendant had represented them to be worth, but refused to receive the note and collateral and bill of sale. It is contended that the plaintiff having rescinded the loan and claimed her money from the defendant was bound to receive from him what she gave him. The tender was inapplicable, because the defendant was sued for the money which he had told the plaintiff he had received by the collection of the note. Having represented to her that the note had been paid he could gain nothing by afterward offering to give it to her again, when, in fact, it had not been paid by the worthless corporation which made it. It appeared that the defendant had the unpaid note of the corporation for $500 for getting the loan from the plaintiff and that she received a bonus of $250 for giving up her $5000 and making the loan, but these facts did not give him any right to make the tender.

The transcript of the record of the Appellate Court shows that a motion was made by appellant in that court for a rule against appellee and her attorneys to show cause why they should not be adjudged in contempt of court, and for an order requiring them to dismiss certain legal proceedings against the appellant in the State of Michigan, and the motion was denied. The abstract of the record contains nothing further except a notation that the motion was based on affidavits which are not in the abstract. There is nothing for this court to review in relation to that motion.

The judgment is affirmed.　　　*Judgment affirmed.*