**ARIZONA WHOLESALE GROCERY CO. v. SOUTHERN PAC. CO. et al.**

**No. 7218.**

Circuit Court of Appeals, Ninth Circuit.

Jan. 24, 1934.

Fred J. Elliott and Frank L. Snell, Jr., both of Phœnix, Ariz., for appellant.

Alexander B. Baker and Louis B. Whitney, both of Phœnix, Ariz., and James E. Lyons and Burton Mason, both of San Francisco, Cal., for appellees.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

For a proper understanding of the issue presented by this appeal, in which it is contended that the appellees' rates on sugar from California points to Globe, Ariz., were unjust and unreasonable, a brief chronological survey of certain reports by the Interstate Commerce Commission will be necessary.

In Arizona Corporation Commission v. A., T. & S. F. Ry. Co. et al., 34 I. C. C. 158, 159, 160, 161, decided on May 25, 1915, the Interstate Commerce Commission reported:

"Effective November 15, 1914, rates on sugar were established to practically all Arizona points conditioned upon a minimum weight of 60,000 pounds, which rates were the same from all California producing points, and almost uniformly on a basis 5 cents lower than the rates from Los Angeles to the same destinations upon the 36,000-pound minimum.
* * *

"Upon examination of all the evidence of record, we are of the opinion and find that the rates on sugar and sirup in straight carloads from points in California to points in Arizona in effect at the time of the hearing [November 30, 1914] have not been shown to be unreasonable to a greater extent than the amounts of the reductions since made. In view of the fact, however, that the carriers have to a considerable extent disregarded distance as a factor in the making of the California-Arizona sugar rates, having established extensive blankets both as to origin and destination points, it is the opinion of the Commission that the present rates to Phoenix via the Southern Pacific and the Arizona Eastern and to Prescott via the Santa Fe are unreasonable in so far as they exceed the rates to the junction points by more than 5 cents per 100 pounds, and that rates for the future should be established upon a basis of not more than 5 cents per 100 pounds over the junction point rates."

The case involved all carriers transporting sugar from California to Arizona. In a table appearing on page 160 of the report, the rate on sugar to Globe, effective March 15, 1914, or subsequently, was $1 per 100 pounds for a minimum weight of 36,000 pounds. No rate for Globe is shown under the new schedule effective on November 15, 1914, for a minimum weight of 60,000 pounds, referred to above.

On July 7, 1916 (Graham & Gila County Traffic Ass'n v. Arizona Eastern R. Co., 40 I. C. C. 573, 586, 587), the commission found "that the through class and commodity rates

from the eastern group territories involved to points on the Globe [Arizona] division [of the Arizona Eastern Railroad], in effect at the time the complaint in this proceeding was filed, * * * have not been shown to be unreasonable to a greater extent than the reductions since made in such through rates." In that report, the commission referred to its findings in the earlier case in the following language:

"Rates on sugar from California points to points in Arizona were passed upon by the Commission in the recent case of Arizona Corporation Commission v. A., T. & S. F. Ry. Co., 34 I. C. C. 158. We there held that the sugar rates in effect on and after November 15, 1914, were not shown to be unreasonable, and nothing further need be said here in respect to that commodity." Graham & Gila County Traffic Association v. Arizona Eastern Railroad Company et al., 40 I. C. C. 573, 576.

On June 27, 1923, the commission considered a complaint in which the charges of unreasonable, unjustly discriminatory, and unduly prejudicial rates contained in the Traffic Association Case, supra, were renewed, and in which were also brought into issue the class rates from California and the class and commodity rates from Oregon and Washington points, as giving undue preference to El Paso, Phœnix, and other points over points in the Globe division. In a report entitled Graham & Gila Counties Traffic Association v. Arizona Eastern Railroad Company et al., 81 I. C. C. 134, 143, hereinafter referred to as the Graham Case, the commission stated:

"As in State of Idaho ex rel. v. Director General [66 I. C. C. 330], supra, the record in the instant case does not support a finding of unreasonableness."

The commission, however, found that the class and commodity rates in question were "unduly prejudicial" to points on the Globe division and "unduly preferential" to other Arizona points.

The commission summarized its holdings in the Graham Case in the following syllabus:

"Class and commodity rates to points on the Globe division of the Arizona Eastern Railroad from interstate points east and west thereof found not unreasonable but found unduly prejudicial. Undue prejudice ordered removed."

In connection with its report in the Graham Case, supra, the commission issued an order commanding the defendant carriers to desist from practicing such undue prejudice

and preference. In connection with the appellant's contention that "the Commission could not have fixed, approved or prescribed the reasonable rates on sugar" to Globe, in the absence of evidence on that question, the opening language in the commission's order is significant:

"This case being at issue upon complaint and answers on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and said division [of the Commission] having, on the date hereof, made and filed a report containing its findings of fact and conclusions thereon, which said report is hereby referred to and made a part hereof. * * * *"

Reference to the report, which is "made part" of the foregoing order, discloses that the commission specifically adverted to the report in the Traffic Association Case, 40 I. C. C. 573, supra:

"The situation as to commodity rates from California to points on the Globe division, as compared with rates to El Paso, Phoenix, and Nogales, is adequately set forth at pages 575–576 of the former report [40 I. C. C.]. Substantially the same relative situation exists to-day." (Page 138 of 81 I. C. C.)

An examination of the pages of the earlier report referred to by the commission in the Graham Case, supra, reveals that in the prior report the commission specifically considered the rates on sugar from California to Globe, Ariz., and, as we have seen, referred to rates on sugar from California to Arizona generally, in citing the Arizona Corporation Commission Case, 34 I. C. C. 158, supra. While it is true that in the Graham Case the commission stated that the "relative" situation was substantially the same, in order to ascertain the *relative* situation as to rates the commission must have been obliged to consider the *actual* commodity rates from California to Globe and to other Arizona points. Indeed, an examination of the context on page 138 of 81 I. C. C. in the Graham Case discloses that this is precisely what the commission did.

Furthermore, it is observable that in the Traffic Association Case, 40 I. C. C. at page 574, the commission confined itself "to the question of unreasonableness in the rates under attack"—the identical question with which we are here solely concerned. The Traffic Association Case, supra, can therefore be expected to be helpful to us in our study of the commission's holding in the Graham Case.

In view of all the foregoing observations, we cannot sustain the appellant's contention that in the Graham Case "the Commission was not considering' or fixing any particular rate on any particular commodity." Without indulging in any strained or far-fetched inferences, we believe that an analysis of the earlier cases referred to by the commission compels the conclusion that in the Graham Case the sugar rates to Globe *were* being considered. The question of whether or not they were also "approved" will be discussed elsewhere in this opinion.

We continue with our analysis of other reports by the Interstate Commerce Commission that bear upon the instant case.

It will be recalled that in the Graham Case, supra, the commission ordered the defendant carriers to cease practicing undue prejudice and preference. The means of removing such prejudice and preference, however, were left open to the carriers. How the carriers exercised this discretion is disclosed in Class and Commodity Rates to Mesa, 92 I. C. C. 512, 514, 515, in which the commission said:

"Defendants could have fully complied with our findings in No. 13139 [the Graham Case, supra, 81 I. C. C. 134] by (1) increasing the rates to Mesa, Nogales, and other points, except Phoenix, taking rates relatively lower than those to Globe division points to the basis applicable to the latter points; (2) reducing the rates to the Globe division points to the basis applicable to Mesa, Nogales, and other points; or (3) establishing a uniform adjustment to all points affected by our findings on a basis somewhat higher than the respective junction-point rates and lower than the sum of the rates to and from the junction points. They followed the latter method in removing the undue prejudice. This adjustment resulted in substantial reductions to all points on the Globe division and reductions or no changes to other points affected by our findings, except Mesa, Nogales, and a few unimportant stations. * * * Since defendants could have met the requirements of our findings and order without reducing the rates to points on the Globe division, it cannot be said that their method of complying with our order was unfair to the complainant."

The Mesa Case, supra, was decided by the commission on October 7, 1924. Since the complaint filed in the District Court in the instant case covers rates on shipments made during the period between April 30, 1923, and September 25, 1925, it is clear that when the shipments in question were made, the rates charged were less than those that the commission had under consideration in the Graham Case. Indeed, this does not seem to be disputed in the instant case.

Such, then, was the situation when the appellant filed the instant suit before the commission, designated as No. 16770 (Sub-No. 6). For the substance of the complaint, including the rates complained of, and for the findings of the commission, we turn to the report of the case in 140 I. C. C. 171, 172, 175, 180, 181, entitled Phœnix Chamber of Commerce v. A., T. & S. F. Ry. Co., et al., generally known as "The Third Phœnix Case," which short designation we are adopting in the present opinion:

"In these complaints it is alleged that the rates on sugar, in carloads, from California points to destinations in Arizona and from California, Kansas, and Colorado points to Gallup, N. Mex., were and are unreasonable and in some instances unduly prejudicial and preferential. We are asked to prescribe just and reasonable rates for the future and to award reparation. Rates and rate differences are stated in amounts per 100 pounds. * * *

"In No. 16770 (Sub-Nos. 1 to 9), filed on various dates from February 17 to May 5, 1925, inclusive, it is alleged that the rates from California points to * * * Globe * * * were and are unreasonable. There are also allegations that the rates assailed were and are unduly prejudicial to * * * Globe. * * *

"The reduced rate [from California points] was established to Bowie and to Tucson, an intermediate point, effective October 27, 1925. The reduction to Bowie was 9 cents, and on the date named the Southern Pacific made reductions of the same amount to * * * Globe, resulting in rates of * * * 85.5 cents. * * *

"Summarized, the present rates, minimum 60,000 pounds, are * * * 85.5 cents to Globe. * * *

"We further find that the assailed rates, minimum 60,000 pounds, from California points were, are, and will be unreasonable to the extent that they exceeded, exceed, or may exceed, respectively, the following, in cents per 100 pounds:

" * * * On and between July 1, 1922, and the effective date of the rates herein prescribed for the future, from the southern California group and the northern California group, respectively, * * * 79 and 89 cents to * * * Globe. * * *

"We further find that complainants, * * * made shipments as described at the rates herein found to have been unreasonable; * * * and that they are entitled to reparation, with interest."

Accordingly, the commission directed the payment of reparation to the appellant on or before May 28, 1931. The appellees refused to comply with the commission's order, and, in accordance with 49 USCA § 16 (2), the appellant brought action in the court below.

That court sustained a demurrer to the complaint. Counsel agreed that the District Court might take judicial notice of the commission's report in the Graham Case, supra.

The appellant declined to amend its complaint and elected to stand upon its sufficiency. Accordingly, the District Court gave judgment dismissing the appellant's complaint, from which judgment the present appeal has been taken.

At the outset, it must be observed that the Supreme Court has held that when the commission has approved or prescribed certain rates, it cannot later award reparations with respect to shipments that moved under such rates. This rule is to be derived from the following language of Mr. Justice Roberts in Arizona Grocery v. Atchison, etc., Ry. Co., 284 U. S. 370, 381, 390, 52 S. Ct. 183, 76 L. Ed. 348:

"This case turns upon the power of the Interstate Commerce Commission to award reparations with respect to shipments which moved under rates *approved* or prescribed by it. * * *

"Where the Commission has upon complaint, and after hearing, declared what is the maximum reasonable rate to be charged by a carrier, it may not at a later time, and upon the same *or additional* evidence as to the fact situation existing when its previous order was promulgated, by declaring its own finding as to reasonableness erroneous, subject a carrier which conformed thereto to the payment of reparation measured by what the Commission now holds it should have decided in the earlier proceeding to be a reasonable rate." (Italics our own.)

▮ It should be noted that the appeal in the Arizona Grocery Case, supra, and the appeal that we are now considering, both were from judgments of the same District Court in cases arising from the *identical report* of the Interstate Commerce Commission; namely, the one appearing in 140 I. C. C. 171. Reference to that report shows that several cases were there considered together, one of them being the Arizona Grocery suit, supra, and the instant case constituting another. The identity of origin of the two cases is established by footnotes on page 171 of 140 I. C. C. in the Third Phœnix Case, supra, and on page 382 of 284 U. S., 52 S. Ct. 183, in the Supreme Court's opinion in the Arizona Grocery Case, supra, as well as by the opinion of this court in Atchison, T. & S. F. Ry. Co. v. Arizona Grocery Co., 49 F.(2d) 563, 564.

We emphasize this identity of origin of the two cases because we are now being called upon to pass upon a misconception of the commission regarding its own powers that has already been clearly pointed out by the Supreme Court. That misconception, and the correction thereof, are thus set forth by the Supreme Court in the Arizona Grocery Case, supra, at pages 382, 383, and 389 of 284 U. S., 52 S. Ct. 183:

"The respondents objected that they should not be required to pay reparations on shipments which moved under rates approved or prescribed by the Commission as reasonable. To this that body replied: 'We reserve the right, upon a more comprehensive record, to modify our previous findings, upon matters directly in issue before us as to which it clearly appears that our previous findings would not accord substantial justice under the laws which we administer. We have such a case here. For the first time the record before us is comprehensive in the evidence which it contains upon the reasonableness of the rates assailed. Upon this record we reach the conclusion that the rates prescribed in the first Phœnix Case [62 I. C. C. 412], during the period embraced in these complaints, were unreasonable and that a lower rate would have been reasonable during that period. If we are within our authority in finding that a lower rate would have been reasonable, then it must follow that shippers who paid the freight charges at the higher rate paid charges which were unreasonable, and are entitled to reparation.' * * *

"The Commission in its report confuses legal concepts in stating that the doctrine of res judicata does not affect its action in a case like this one.

"It is unnecessary to determine whether an adjudication with respect to reasonableness of rates theretofore charged is binding in another proceeding, for that question is not here presented. The rule of estoppel by judgment obviously applies only to bodies exercising judicial functions; it is manifestly inapplicable to legislative action. The Commission's error arose from a failure to recog-

nize that, when it prescribed a maximum reasonable rate for the future, it was performing a legislative function, and that, when it was sitting to award reparation, it was sitting for a purpose judicial in its nature. In the second capacity, while not bound by the rule of res judicata, it was bound to recognize the validity of the rule of conduct prescribed by it, and not to repeal its own enactment with retroactive effect. It could repeal the order as it affected future action, and substitute a new rule of conduct as often as occasion might require, but this was obviously the limit of its power, as of that of the Legislature itself."

The appellant, indeed, concedes that the present case turns upon an interpretation of the Arizona Grocery Case, supra; for in its brief, the appellant thus states the issue now before us:

"If the Interstate Commerce Commission in the Graham and Gila Counties Case fixed and prescribed the just and reasonable rate on sugar to Globe for the future, then the ruling of the Supreme Court of the United States in the Arizona Grocery Case applies and the order of the District Court in sustaining the defendant's [appellees'] demurrer in the present case is correct.

"If, on the other hand, the Commission did not fix or prescribe the reasonable rate on sugar to Globe in that decision, then the Arizona Grocery Company Case does not apply and the order of the District Court in sustaining the defendant's demurrer is in error and should be set aside."

While in the foregoing statement of the issue the appellant seems to overlook the Supreme Court's holding that not only a rate *prescribed* by the commission, but one approved by it, should bar reparation for charges on shipments moving under such rate, elsewhere in its brief the appellant more clearly joins issue with the appellees, when it states:

"In the Graham and Gila Counties Case the Commission was not considering or fixing any particular rate on any particular commodity. It did not fix, prescribe, or *approve* reasonable rates on sugar or on any other commodity." (We ourselves have italicized the word "approve".)

We therefore next address ourselves to the pivotal question in this case; namely, Did or did not the commission *approve*, in the Graham Case, supra, the rate on sugar to Globe for which, in the instant case, reparations were thereafter awarded?

In pursuing this inquiry, we shall derive some assistance from the interpretation placed by the commission itself upon its language in the Graham Case, as well as from the construction given both by the commission and by the Supreme Court to similar language in similar reports of the commission. In all the following excerpts, the italics are our own.

■ In California Packing Corp. v. S. P. Co., 128 I. C. C. 631, 632, the commission said:

"Particular attention is called to a rate of $1.40 which was established from Ventura and Hunt, Calif., to Globe, Ariz., 816 and 932 miles, respectively, following Graham & Gila Counties Traffic Ass'n v. A. E. R. R. Co., 8: I. C. C. 134, wherein we *found* class and commodity rates to points on the Globe division of the Arizona Eastern from interstate points east and west thereof *not unreasonable* but unduly prejudicial."

Again construing its language in the Graham Case, the commission, in Arizona Corporation Commission v. Arizona E. R. Co., 147 I. C. C. 391, 398, stated:

"* * * We *found* that class and commodity rates to points on the Globe division higher than to Bowie were *not unreasonable.*"

Both of the foregoing reports clearly establish that the commission regarded its holding in the Graham Case as a *positive finding of a negative fact*—a finding just as definite, concrete, and *binding* as a jury's verdict of not guilty.

Indeed, we are justified in assuming that, if the commission had intended to announce that it was making *no finding whatsoever* as to reasonableness, it would have used the accurate language employed by it in the Arizona Corporation Commission Case, supra, 34 I. C. C. 162:

"The facts of record being insufficient to warrant any finding as to the rates on mixed carloads of sugar and sirup, *none will be made.*"

In Bell & Zoller Coal Co. v. B. & O. S. W. R. R. Co., 74 I. C. C. 433, 443, the commission used language less positive than the holding in the Graham Case:

"The present facts considered, we do not conclude upon these records that the rule attacked * * * [rule 4] is in principle unreasonable or unduly prejudicial. Our former conclusions in the Fairmont Cases [62 I. C. C. 269], based upon a mistaken adherence to and extension of the decision in the Illinois Case [25 I. C. C. 286], are reversed. The present decision is of course without prejudice to such determination of the questions before us in the general proceeding indicated

as involving the mine rating and car-distribution rules as the record may there require."

Yet the Supreme Court, in United States v. New River Co., 265 U. S. 533, 537, 541, 44 S. Ct. 610, 611, 68 L. Ed. 1165, thus interpreted the commission's ruling:

"December 11, 1922, it [the full Commission] reversed the findings of division 5 and *found* that rule 4 was *not unreasonable* or unduly prejudicial. Bell & Zoller Coal Co. v. B. & O. S. W. R. Co., 74 I. C. C. 433. * * *

"The Commission reversed its former findings and decided in favor of rule 4 and dismissed the complaints assailing that rule. The order expressly includes the findings and conclusions stated in the report. It is not merely negative. Clearly, the order permits and authorizes the carriers to apply rule 4. If that rule is illegal, * * * such permission and authority will not sustain it, and suit will lie to set it aside. The Chicago Junction Case [264 U. S. 258, 44 S. Ct. 317, 68 L. Ed. 667], supra. Plainly, it was the intention and purpose of the Commission that rule 4 should be applied in place of the 150 per cent. rule."

In Swift Lumber Co. v. F. & G. R. R. Co., 61 I. C. C. 485, 491, the commission held as follows:

"We *do not find* that the rates on yellowpine lumber, timber, and lumber products in effect subsequent to January 1, 1919, from Knoxo to the destinations in question *were intrinsically unreasonable,* except that we find that the rates to points in Tennessee, which were made by combination of the local rates to and beyond Fernwood, were unreasonable to the extent that they exceeded the corresponding contemporaneous rates from Fernwood to the same destinations by more than 2.5 cents per 100 pounds."

The commission interpreted its own finding in the Swift Case, supra, as a positive holding of a negative fact, in the case of Fleming Bros. v. G. N. R. R. Co., 92 I. C. C. 582, 584:

"We found that, except to the extent of the excess in the rates to the latter destinations of more than 2.5 cents over Fernwood, the rates assailed were *not unreasonable.* * * * *"

A second time in Stanley Lumber Co. v. A. & V. Ry. Co., 100 I. C. C. 249, 250, the commission construed its finding in the Swift Case:

"We *found* that the rates then in effect were *not intrinsically unreasonable.* * * * *"

The commission again construed the Swift holding as a positive finding, in Hines Yellow Pine Trustees v. A., C. & Y. Ry. Co., 109 I. C. C. 453, 455:

"*Upon the facts presented* in the Swift Case, supra, we *found* the rates there assailed unduly prejudicial but *not unreasonable.*"

Once more, the commission, referring to the Swift Case, supra, in Birch Valley Lumber Co. v. S. C. & M. R. R. Co., 144 I. C. C. 419, 423, thus interpreted its own language in the prior report:

"We *found* that the rates assailed were *not unreasonable,* except to points in Tennessee, but were unduly prejudicial to the extent that they exceeded the blanket basis."

Finally, in United States v. Illinois Cent. R. R. Co., 263 U. S. 515, 519, 44 S. Ct. 189, 191, 68 L. Ed. 417, the Supreme Court itself construed the language used by the commission in the Swift Case, supra:

"The Swift Lumber Company instituted proceedings before the Commission * * * in which it attacked the higher rates from Knoxo both as unreasonable * * * and as unjustly discriminatory. * * * The Commission *found* that the rates from Knoxo were *not unreasonable.* * * * *"

In American Wholesale Lumber Ass'n v. Director General, 66 I. C. C. 393, 407, the commission made the following finding:

"We *find* that conditions existing at the time warranted the establishment of the penalty charge and that it was *not unreasonable* or otherwise unlawful. * * * We are of the view that there is no justification for the charge at the present time and we find that while present conditions continue it is and will be unreasonable."

Twice did the Supreme Court of the United States interpret the foregoing as a positive finding of a negative fact. In Edward Hines Yellow Pine Trustees v. U. S., 263 U. S. 143, 146, 44 S. Ct. 72, 73, 68 L. Ed. 216, Mr. Justice Brandeis said:

"After extensive hearings the Commission held that * * * the charge then imposed *had not been shown to be unreasonable.*"

Again, in Turner, etc., Lumber Co. v. C. M. & St. P. Ry., 271 U. S. 259, 261, 263, 46 S. Ct. 530, 531, 70 L. Ed. 934, the same justice twice again construed the foregoing as an ever more positive finding:

"This penalty charge was attacked as unreasonable * * * in American Wholesale Lumber Association v. Director General, 66 I. C. C. 393, and there held by the Interstate Commerce Commission to be *neither unreasonable nor otherwise unlawful.* * * *

"The power to impose such charges, if reasonable, is clear. Those here in question *have been found by the Commission to be reasonable.* It is not claimed that there was no evidence to support the finding."

In Wheelock & Bierd v. Akron, C. & Y. Ry. Co., 179 I. C. C. 517, 523, the commission held:

"We *find* that the assailed divisions of the reshipping or proportional rates have *not been shown to be unjust, unreasonable, or otherwise unlawful* as alleged, and the finding in the original report in that respect is reversed."

In construing that report, the Supreme Court likewise twice interpreted the commission's holding as a positive finding, in Alton R. Co. v. United States, 287 U. S. 229, 231, 237, 53 S. Ct. 124, 125, 77 L. Ed. 275:

"It [the Commission] *found* that the divisions of the so-called 'reshipping' rates were *'not unjust, unreasonable or otherwise unlawful.'* * * * Wheelock v. A., C. & Y. R. Co., 169 I. C. C. 594; Id., 179 I. C. C. 517. * * *

"By their unauthorized action the connecting carriers forced the Alton to become the moving party before the Commission, with the result that the Commission's *approval* of the divisions effected by them was expressed in the form of a refusal to interfere."

Using, as in the instant case, qualifying language as to the fact situation there presented, in Montgomery Cotton Exchange v. L. & N. R. R. Co., 112 I. C. C. 325, 333, the commission held as follows:

*"Under the circumstances here presented we are of opinion and find* that the rates assailed were *not unreasonable* under section 1 and, as above indicated, there is no allegation of a violation of section 3 [49 USCA §§ 1, 3]."

This language is of particular interest to us in the present inquiry, for it has been presented for interpretation before three tribunals—the commission itself, the Circuit Court of Appeals for the Fifth Circuit, and, in an application for certiorari to the Supreme Court of the United States.

The case came up before the commission "on reconsideration," in a report bearing the same caption, in 118 I. C. C. 157, 158, 159:

"With respect to the allegation of unreasonableness, we find, upon reconsideration, no occasion for a modification of the conclusion in the former report *that the evidence did not warrant a finding of unreasonableness.* The finding is without prejudice to any conclusion

that may be reached as to the same issue upon a different record in No. 16900 now pending.

"We accordingly find that the applicable rates were not and are *not unreasonable."*

Once again the case came before the commission, "on further hearing," reported under the same title in 153 I. C. C. 402:

"This case, originally decided by division 4, 112 I. C. C. 325, was reopened on petition of the complainants, and on further consideration, 118 I. C. C. 157, we affirmed the *findings* of division 4 *that* the applicable rates on cotton in any quantity from points in Alabama south of Montgomery, Ala., * * * *were not and are not unreasonable."*

Despite the negative and qualifying expressions found in the above holdings, the Circuit Court of Appeals thus interpreted the commission's language, in Hohenberg v. Louisville & N. R. Co., 46 F.(2d) 952, 954:

"The contention that the rate was unreasonable was dismissed by the commission and the same *was held to be fair and reasonable."*

Certiorari was denied in the foregoing case by the Supreme Court in 284 U. S. 617, 52 S. Ct. 6, 76 L. Ed. 527.

The appellant relies heavily upon certain language used by the Commission in Livestock—Western District Rates (Livestock Cases), 190 I. C. C. 611, 657, 658:

"We conclude that Nos. 19785, 20179, and 20224 are not cases falling within the scope of the holding of the Supreme Court in the Arizona Grocery Co. Case. To find otherwise would mean that if a complaint attacking all the rates in the United States were to be filed, and the most meager kind of a record made, upon which it would be necessary for us to find that the rates were not unreasonable, we would thereafter be precluded from awarding reparation under any rate in the United States, no matter how unreasonably high it might be shown to be in another proceeding by other parties."

A study of the context of the foregoing report, as well as of the cases therein cited, convinces us that the former is not authority contrary to our view.

We quote again from the report in the Livestock Cases, at pages 656, 657 of 190 I. C. C.:

"Three cases are relied upon as having established the reasonableness of the prior rates: In National Live Stock Shippers' League v. A., T. & S. F. Ry. Co., 69 I. C. C. 407, we found that the record as made would not support a finding that rates on ordinary livestock, in carloads, within the western and Mountain-

Pacific groups were unjust and unreasonable, or would be for the future to an extent greater than that found in Reduced Rates, 1922, 68 I. C. C. 676, and dismissed the complaint. In that case complainants did not ask for a readjustment of individual rates, but for a blanket reduction, based primarily upon economic considerations."

In addition to the point of difference between the Livestock Cases, supra, and the National Live Stock Shippers Case, noted in the foregoing excerpt, reference to the latter report discloses that the commission there *left the door open for future findings*, thus placing all parties concerned on notice that changes might be made in connection with another case then pending:

"The complaint will accordingly be dismissed, but without prejudice to any findings or orders which may be made in No. 12630, National Live Stock Exchange v. A., T. & S. F. Ry. Co., now pending before us." (Page 409 of 69 I. C. C.)

We continue our quotation from the Livestock Cases report:

"In American National Livestock Ass'n v. A., T. & S. F. Ry. Co., 112 I. C. C. 197, the rates on livestock in the territory between the Missouri River and the Pacific coast were found to be not unreasonable or unduly discriminatory, and the complaint was dismissed. * * * Because of the pendency of Docket No. 15686 and related cases, dealing with livestock rates generally throughout the territory, the case was dismissed without prejudice to complainant's right to bring the matter before us again with a view to developing a record upon which effective action might be taken; and division 1 further said that their action was—

" 'not to be regarded as an approval of the present basis of rates on stock cattle and we strongly recommend to the defendants that they cooperate with the complainants in the establishment throughout this territory of rates for the movement of stock cattle which are adapted to existing operating and transportation conditions. * * * '

"In No. 15686, American National Live Stock Ass'n v. A., T. & S. F. Ry. Co., 122 I. C. C. 609, we found that the record was inadequate to warrant a finding either that livestock rates in the West, as a whole, were in excess of reasonable maxima as alleged, or in excess of the lowest possible rates compatible with the maintenance of adequate transportation service, that might lawfully be required; but that the record would be kept open for further investigation on our own initiative in connection with No. 17000 for the purpose of removing inconsistencies in the present rates, and we stated that possibly the record in such further investigation would afford more light on the question of whether the existing level constituted the lowest possible lawful rates. * * * In concluding our report, we further said, page 634:

" 'The records in Nos. 15686, 16113, 16131, and 15565 are inadequate upon which to base a finding of maximum unreasonableness or to correct the existing improprieties in the rates on livestock in the western district.

" ' * * * In order to develop a record which will afford sufficient basis for correcting those improprieties, in accordance with the directions of the Hoch-Smith resolution, further investigation will be made as expeditiously as practicable under No. 17000 in relation to the rates on livestock in the western district, and * * * the records in Nos. 15686, 16113, 16131, and 15565, will be kept open and available for consideration in connection with that further investigation.'

"In none of the three cases described did we give specific consideration to rates from the Southwest to Los Angeles, or from Nebraska, Colorado, and Wyoming to Ogden; and rates from the Southwest into Kansas were specifically found unreasonable to the extent that they exceeded the aggregate of intermediate rates."

It is observable that in its brief, while quoting copiously from the report in the Livestock Cases, supra, appellant has omitted from its quotation precisely the strongly qualifying excerpts that we have just transcribed—excerpts that clearly indicate the utter lack of finality of the three cases there relied upon by counsel as having "established the reasonableness of the prior rates."

When we compare those three cases with the Graham report, supra, with its 10-page exhaustive study of existing rates conditions, with the unqualified finality of its holdings, and with the specific provision in the order that the report was to be "made a part" thereof; when, we repeat, we consider the Graham report in its entirety, and give to it its reasonable intendment, we at once perceive its essential differences from the three cases referred to above.

Furthermore, the appellant's attempted reasoning by analogy must yield to the commission's own *specific* construction of the Graham Case, with which we have already fully dealt.

Similarly, we cannot be impressed by the appellant's attempt to qualify the commis-

sion's holding in the Graham Case by the following reference there made to another report:

"As in State of Idaho ex rel. v. Director General, supra [66 I. C. C. 330], the record in the instant case does not support a finding of unreasonableness."

The appellant seeks to weaken the effect of the commission's holding as to reasonableness in the Graham Case, supra, by pointing out that in the Idaho Case, supra, at page 337 of 66 I. C. C., the Commission used the following language:

"In no instance was any attempt made by complainants to prove that any particular rate from or to any point outside the state of Idaho was unreasonable, but all of the proof was addressed to showing the difference in rates only. These records will not support a finding of unreasonableness."

A study of the Graham report, however, discloses, as we have seen, that the reasonableness of rates, as well as the questions of unjust discrimination and undue prejudice, was considered by the commission, and that its order in that case was made after "full investigation of the matters and things involved." We find no statement in the Graham Case, as we do in the Idaho Case, that there was "no attempt to prove" any "particular rate" to be "unreasonable." Our foregoing analysis of the Graham Case and the prior connected controversies, on the contrary, has shown that the reasonableness of individual rates *was* being considered in the Graham report.

▮ Finally, if we must be bound by reasoning, by analogy, or by other inferences of any kind, we must accept the interpretation given by the Supreme Court to reports of the commission similar to that now before us. We have already fully discussed that interpretation.

Nor are we impressed by the applicability of the other cases principally relied upon by the appellant.

Sprunt & Son v. United States, 281 U. S. 249, 251, 254, 259, 50 S. Ct. 315, 319, 74 L. Ed. 832, clearly shows that, even in the second report on the same case, Application of Rates on Cotton to Gulf Ports, 123 I. C. C. 685, 695, "any question as to the reasonableness of the level of the rate was expressly left open by the Commission."

The cases of Interstate Com. Commission v. B. & O. Railroad Co., 145 U. S. 263, 277, 12 S. Ct. 844, 848, 36 L. Ed. 699, and Kin-

navey v. Terminal R. Ass'n (C. C.) 81 F. 802, 804, merely hold that "a charge may be perfectly reasonable under section 1, and yet may create an unjust discrimination or an unreasonable preference under sections 2 and 3 [49 USCA §§ 1–3]." In the Graham Case, however, as we have seen, the commission specifically found that "the record * * * does not support a finding of unreasonableness," but that the rates were "unduly prejudicial * * * and unduly preferential." Hence there was no question of inferring that the rates were "unreasonable" simply because they were prejudicial and preferential. The commission specifically found that they were *not* unreasonable.

▮ The appellant argues earnestly that the *order* in the Graham Case is silent as to the reasonableness of the rates to Globe, and that therefore the commission cannot be understood to have taken any "legislative action on the question of reasonableness of rates for the future."

Two short answers may be made to this contention. First, the order in the Graham Case specifically, as we have seen, makes the report a part thereof; and in the report the question of unreasonableness is treated. Second, the Supreme Court, in the Arizona Grocery Case, has recognized the essential unity of a report and an order promulgated by the commission:

"The Commission may, and often does, in the same proceeding, and *in a single report and order,* exercise its additional authority by fixing rates or rate limits for the future." (Page 388 of 284 U. S., 52 S. Ct. 183, 186.)

In conclusion, we desire to point out, in justice to the commission, that its order awarding reparation to the appellant was made and published on April 13, 1931, while the Supreme Court's decision in the Arizona Grocery Company Case, supra, was handed down on January 4, 1932. It is therefore observable that the commission, at the time it made its award, did not have the benefit of the Supreme Court's views on the subject of the commission's lack of power to allow reparation for charges made under rates theretofore approved by the commission.

▮ To recapitulate, we hold that the commission's findings in the Graham Case constituted an "approval" of the reasonableness of the rates then existing; that, as stated in the Mesa Case, the carriers removed the prejudice and preference found in the Graham Case, by *reducing* the rates to all points on the

Globe division; and that, therefore, the principle of the Arizona Grocery Case applied; that is to say, the commission cannot now award reparation for rates even lower than those heretofore approved by it.

Accordingly, the judgment is affirmed.