**JONES et al. v. ALTON & S. R. CO. et al.**

District Court, E. D. Illinois.

April 30, 1934.

See, also, 5 F. Supp. 532.

Jones, Grant & Jones, of Danville, Ill., for plaintiff.

Meeks & Lowenstein, and Gunn, Penwell & Lindley, all of Danville, Ill., for defendant.

LINDLEY, District Judge.

This action was brought by plaintiffs under section 16, par. 2, of the Interstate Commerce Act (49 USCA § 16 (2), to recover alleged unreasonable excesses of freight rates charged by defendants for the transportation of coal from certain districts in Illinois to Marshall, Mexico, and Vandalia, Mo., in violation of section 1 of the act (49 USCA § 1). The charges were made upon rates found by the Commission to be unreasonable in report No. 23424, Milton & Son et al. v. Alton & Southern Ry. Co. et al., 179 I. C. C. 200, decided November 23, 1931, which covered in all nine cases, and awarded to plaintiffs here, as wrongfully collected, freight charges of $8,777.72. To recover this amount with interest and attorneys' fees plaintiffs brought this suit.

Trial by jury was waived in writing, and at the conclusion of the evidence the court took the matter under advisement and has since received and considered voluminous briefs and arguments of the parties.

The defendants insist that assumpsit is not the proper form of action. Clearly under Lewis-Simas-Jones Co. v. Southern Pacific Co., 283 U. S. 654, 51 S. Ct. 592, 75 L. Ed. 1333, the collection by a common carrier of exorbitant charges is a tort.

It has always been the law in Illinois that one may waive a tort and elect to sue in assumpsit to recover money tortiously received or retained by defendant. Arnold v. Dodson, 272 Ill. 377, 112 N. E. 70; Donovan v. Purtell, 119 Ill. App. 116, affirmed 216 Ill. 629, 75 N. E. 334, 1 L. R. A. (N. S.) 176; Havana Press Drill Co. v. Ashurst, 148 Ill. 115, 35 N. E. 873. In Stewart v. Brady, 300 Ill. 425, 133 N. E. 310, 318, the court held that assumpsit was the proper form of action in suing to recover a statutory penalty for selling securities in violation of the state law. The court said: "An action of assumpsit will lie for money had and received for the use of the plaintiff, wherever, by reason of a contract relation, the defendant has obtained possession of money which in justice he ought to refund. Arnold v. Dodson, 272 Ill. 377, 112 N. E. 70. Assumpsit may be supported for money accruing due to the plaintiff under the provisions of a statute which does not restrict him to any other remedy."

In A. L. Jones Co. v. C., M. & St. P. Ry. Co., 213 Ill. App. 283, the court approved assumpsit as the proper pleading upon which to recover carrying charges in excess of those authorized by order of the Illinois Commerce Commission. Clearly plaintiffs are entitled to elect to maintain the present action in the form of assumpsit.

Defendants contend further that there is no proof of service of the order of the Commission directing the railroad to pay the said excessive charges required under the section which requires that every order of the Commission shall be served upon the designated agents of defendants in the city of Washington. See 49 USCA § 16 (5).

The evidence in the present case contains the certificate of the secretary of the Commission reciting the fact that service of the order was made on May 11, 1933, upon the Washington representative of defendants and that the receipts for same are now on file in the office of the Commission. It is contended that the certificate of any such ministerial officer proves only the document itself and that there is no competent evidence, therefore, to support a finding of proper service. However, this certificate was not offered to prove facts of record with the Commission, but, as I analyze the same, it was merely a certificate by a ministerial officer that he had performed a duty required of him by law. In other words, it was equivalent to the return of a marshal or sheriff on a subpœna or summons, made in the usual course of legal proceedings reciting service upon defendants. I am of the opinion, therefore, that there is sufficient proof of service.

It might well be observed in this connection that section 16, par. 5, of the act makes it mandatory upon the Commission to serve copies of orders upon parties in the proceeding before it and that many courts have held that, in the absence of evidence to the contrary, it is ordinarily presumed that public officers have performed the duties imposed upon them by law. U. S. v. Kinkead (D. C.) 248 F. 141, affirmed (C. C. A.) 250 F. 692; U. S. v. Chemical Foundation (D. C.) 294 F. 300, affirmed (C. C. A.) 5 F.(2d) 191; Williams v. Vreeland (C. C. A.) 244 F. 346, affirmed 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038; Aldis v. South Park Com'rs, 171 Ill. 424, 49 N. E. 565; People ex rel. Stern v. E., J. & E. Ry. Co., 298 Ill. 574, 132 N. E. 204; Philadelphia & Reading Coal & Iron Co. v. Chicago, 158 Ill. 9, 41 N. E. 1102; Mix v. People ex rel. Shaw, 81 Ill. 118; Jackson v. Cummings, 15 Ill. 449; Village of Depue v. Banschbach, 273 Ill. 574, 113 N. E. 156.

The record further shows that defendants were served with the order in the Milton Case wherein it was found that petitioners were entitled to reparation and filed petition for rehearing on April 5, 1933, 33 days before the reparation order was issued, wherein they asked to have the matter reopened and reconsidered by the entire Commission on the question of reparation. A similar petition 25 days later asked for such reopening and for vacation of the order and for consideration by the entire Commission of the question of reparation. Apparently defendants had full notice of what the Commission was doing.

There is a special situation with regard to the Alton Railroad Company. The vice president of that company wrote to plaintiffs' representative on July 5, 1933, within three months after the orders of reparation were entered, saying that the only reason the company had for refusing at that time to pay the claims was that it was waiting for advice from counsel for the Missouri-Pacific as to proper basis for settlement. This clearly showed notice and waiver of any defect therein.

■ Defendants contend further that it was necessary that plaintiffs show that they had paid the alleged unreasonable charges under protest, and they rely in this connection upon the decision of the Circuit Court of Appeals for the Seventh Circuit, in Knudsen-Ferguson Fruit Co. v. C., St. P., M. & O. Ry. Co., 149 F. 973, where certiorari was denied by the Supreme Court, 204 U. S. 670, 27 S. Ct. 786, 51 L. Ed. 672. That case had to do with the cost of icing in transit. Plaintiff paid the demanded charge and then sued to recover it, and it was held that he could not recover because he had not paid the same under protest. This case was decided at a time when it was the practice to file suits in court without first obtaining a finding by the Commission.

It is further contended that the Supreme Court of the United States in Louisville & Nashville R. R. Co. v. United States, 267 U. S. 395, 45 S. Ct. 233, 69 L. Ed. 678, established the rule for all time that payment without protest cannot be collected. There the railroad company had filed suit to recover the amount by which the tariff rate charges on shipments of coal received by the United States as consignee were reduced by government land grant deductions, as contended, unlawfully. The court held that, same not having been paid under protest, it could not be recovered.

In reply to this contention plaintiffs very pertinently suggest that, in view of the fact that there is before the court no transcript of the record before the Commission upon which the order of reparation was based, but only the final order, it will be presumed that the Commission had before it all the facts necessary to make a valid award. Thus in Spiller v. A., T. & S. F. Ry. Co., 253 U. S. 117, 40 S. Ct. 466, 470, 64 L. Ed. 810, the court said: "Obviously we hardly could sustain a decision rejecting the reparation order upon the ground that there was not sufficient evidence before the commission to support it when the whole of the evidence that was before the commission was not produced."

The rule thus announced makes it unnecessary to pass upon the closely controverted question of whether payment under actual protest is necessary as a condition precedent to a successful action. In the eight cases involved in No. 23424, Milton et al. v. Alton & Southern, 179 I. C. C. 200, the Commission found the rates unreasonable, and thereafter in pursuance of the statute awarded the reparation now sought to be recovered on May 8, 1933. This finding and order of the Commission and service of notice of the same made out a prima facie case for plaintiffs entitling them to judgment unless legal defect is shown by the evidence.

■■ The principal defense in this controversy is that the rates found unreasonable in the Milton Case and as to which reparation was awarded to plaintiffs had been previously approved by the Interstate Commerce Commission, and therefore the Commission could not properly award damages, in view of the holding of the Supreme Court in Arizona Grocery Co. v. Atchison, Topeka & Santa Fé Ry. Co., 284 U. S. 370, 52 S. Ct. 183, 76 L. Ed. 348, and Arizona Wholesale Grocery Co. v. Southern Pacific Co., 68 F. (2d) 601 (C. C. A.). In this connection defendants rely upon the reports of the Commission in Illinois Coal Cases, 1920, 62 I. C. C. 741; Id., 64 I. C. C. 751; Reduced Rates, 1922, 68 I. C. C. 676, investigation and suspension docket No. 2346 (not reported), and Mississippi Valley Farm Equipment Ass'n v. B. & O. R. Co. et al., 159 I. C. C. 46. It does not appear that in any of these cases, the Commission at any time specifically prescribed or fixed by order any of the rates herein involved, or that any of the charges found unreasonable in the Milton Case were involved in the hearings relied upon by defendants. But it is claimed that the rates from the Illinois coal producing districts in general to destinations in Missouri

in general were involved in the cases relied upon and that in them the Commission either expressly or by necessary implication decided that the rates were not unreasonable.

In Corray v. B. & O. R. R. Co., 2 F. Supp. 829, this court held that under the Arizona Grocery Case, as a legislative body, the Commission could not declare unreasonable a rate previously fixed by it as a reasonable rate. Though such a fixing of rates is not a judgment, having the effect of res judicata, it is the result of legislative act by the Commission and is a legal act of the carrier. In the absence of a specific finding by the Commission of reasonableness, in pursuance of its legislative capacity, there is no estoppel against it thereafter granting relief against the same, if it finds them in fact unreasonable. This is upon the doctrine that no legislative act may be retroactive to the detriment of citizens. It becomes material, therefore, to determine whether there has been a specific finding by the Commission of the reasonableness of the rates herein involved. The test laid down by the Supreme Court for determining whether the Commission has lost jurisdiction to award reparation is whether it has specifically prescribed a specific rate for the future by legislative order. Brimstone R. R. & Canal Co. v. United States, 276 U. S. 104, 48 S. Ct. 282, 72 L. Ed. 487; Great Northern Railway Co. v. Sunburst Oil & Refining Co., 287 U. S. 358, 53 S. Ct. 145, 77 L. Ed. 360, 85 A. L. R. 254.

The rates from the Belleville section to Marshall, Mexico, and Vandalia, Mo., being the ones in question here, are not mentioned in the report of the Illinois Coal Cases. Nor does that report show that they were the rates in effect between those points, either at the time of the hearing or at the time of the decision of Illinois Coal Cases in 1920. The only destinations considered in that report and the only rates to Missouri mentioned therein are St. Louis, Moberly, Springfield, and Jefferson City and the rates to those points. None of them is the same as the rate to Marshall, Mexico, or Vandalia. The Commission was then dealing with the question of the general rates from the general territory in Illinois to the general territory in Missouri. The language of the report is that the rate from the Belleville districts to points in Missouri are not unreasonable but prejudicial. Inasmuch as it appears that the complaint in the prior case did not attack the reasonableness of any specific rate; that at the hearing of the Illinois Coal Cases, the complaint raised no question as to the reasonableness of the rates here questioned; that the Commis-

sion there made no finding whatever with respect to the reasonableness of any specific rate to any destination; that the report mentioned only destinations such as St. Louis, Moberly, and Springfield; and that the present record does not show the rate from any Illinois district to Missouri at the time of the hearings in those cases—it does not seem reasonable to interpret the order of the Commission in the Illinois Coal Cases as one fixing certain specific rates within the meaning of "finding and fixing" as I interpret the decision of the Supreme Court in the Arizona Grocery Case. That the reasonableness of no specific rate was in question appears from the transcript of evidence in the Illinois Coal Cases, where the witnesses expressly stated that they were not directing their complaint to the reasonableness or unreasonableness of the measure of the rates. It appears clearly that the issue in that case was one of prejudice only.

Later in Shelbina Milling Co. v. C., B. & Q. R. Co., 198 I. C. C. 241, decided December 18, 1933, the Commission expressly refused to hold that it had previously prescribed the rates complained of, and said with regard to the prior hearing that it did not enter an order fixing rates therein and did not pass upon the unreasonableness of the certain specific rates then in controversy. The same is true of the decision of the Commission No. 24899, A. B. Cole & Sons et al. v. Missouri-Pacific R. R. Co., 198 I. C. C. 252, decided the same day.

Defendants contend that in Mississippi Valley Farm Equipment Ass'n et al. v. B. & O. R. R. et al., 159 I. C. C. 46, decided October 17, 1929, the Commission passed upon rates to Bowling Green and held that it had not been shown that the rates to that city were unreasonable. Therefore it is urged that in view of such decision, the Commission could not legally award reparations from the Springfield district to Vandalia and Mexico and Missouri, inasmuch as the rates to Bowling Green, an intermediate point, were higher and were found not unreasonable. The report shows that the rates from Springfield to Mexico were not in any manner involved, and the Commission made no finding whatsoever with respect to the same. The rates therein involved were later voluntarily established by defendants, and no order either for the past or for the future was entered, but, on the contrary, the complaint was dismissed.

 While it is a violation of the law for carriers to charge higher rates to an inter-

mediate point than to a more distant point, the fact that their rates are so related does not of itself prove the reasonableness or the unreasonableness of the larger rate, for the question of reasonableness is always a question of fact, depending upon the proof in each case. This fact may be prima facie evidence that the higher rate is unreasonable, but the question of reasonableness involves the exercise of an administrative function as to which the Commission's decisions are conclusive, if supported by evidence. Mitchell Coal & Coke Co. v. Pa. R. R., 230 U. S. 247, 33 S. Ct. 916, 57 L. Ed. 1472; South Carolina Asparagus Growers' Ass'n v. Southern Ry. Co. (C. C. A.) 64 F.(2d) 419. There being no presentation of the evidence submitted to the Commission in the present case, there is a conclusive presumption that the evidence supports the same.

From what has been said, it seems clear that the award of reparation by the Commission was not wrongful because of any estoppel brought about by any prior fixing of rates involved in this case. In other words, there has been no prior specific finding as to specific rates involved in this case or out of which these rates grow. In the absence of such specific finding, therefore, the Commission, under the authorities quoted, was empowered to exercise its discretion. Having had before it evidence which is not submitted here, it cannot be presumed that the Commission acted otherwise than in the exercise of such authorized discretion.

The Alton Railroad Company was not before the Commission. It is successor to the right and title of the receivers of the Chicago & Alton Railway Company, whose assets it purchased; the sale being approved by the United States District Court for the Northern District of Illinois. Under the decree there, the Alton Railroad Company agreed to pay liabilities incurred by the receivers in their operation, and the court reserved exclusive jurisdiction over such liabilities. Recognizing the validity of such decree, plaintiffs petitioned for, and obtained leave to make the Alton Railroad Company a party defendant in this suit. The court had a perfect right to grant such permission in order to bring about a settlement of the controversy in another court. The order having been entered and no appeal having been taken therefrom, it follows that this court has jurisdiction of the Alton Railroad Company.

The liability or nonliability of the Missouri-Pacific may not be determined, in view of the restraining order heretofore entered,

on account of the bankruptcy of that railroad company.

It follows that plaintiffs are entitled to reparation and interest thereon as prayed except as against the Missouri-Pacific. Proper judgment for same showing specific allocation may be submitted.

Plaintiffs contend that there should be allowed, as attorneys' fees, a minimum of $3,500 for the Chicago counsel and $350 for Danville counsel. The evidence submitted to me indicates a reasonableness of such charges. However, I take it that the court has a right to consider its own experience concerning proper fees. I think the amount suggested too large. The attorneys' fees will be fixed as follows: To Arvid B. Tanner, $1,750; to John E. Sebat, $200. These amounts may be included in the judgment to be prepared and submitted.