## TREMONT v. UNITED STATES.*
### No. 9678.

Circuit Court of Appeals, Eighth Circuit.
June 26, 1933.

James Fleming, of Minneapolis, Minn., for appellant.

Lewis L. Drill, U. S. Atty., and Robert V. Rensch, Asst. U. S. Atty., both of St. Paul, Minn.

Before KENYON and GARDNER, Circuit Judges, and DEWEY, District Judge.

KENYON, Circuit Judge.

This is an appeal from a conviction upon both counts of an indictment which charged in one count unlawful possession, and in the other unlawful transportation of intoxicating liquor. A jury was waived, and the case tried to the court. The issues involved in a motion to suppress certain evidence on the ground that it was unlawfully taken from defendant in violation of his constitutional rights were by agreement heard at the time of the trial, and the motion was denied by the court. The question of the sufficiency of the evidence to submit the case to the jury as to the question of transportation was raised by defendant at

*Rehearing denied August 14, 1933.

the close of the testimony by motion for a verdict of not guilty.

The assignments of error raise two questions, viz.: (a) Error in denying defendant's motion to suppress evidence; (b) error in denying defendant's motion for a directed verdict of not guilty.

After the arrest of defendant, he sought to recover back his property, and signed and swore to a document, a portion of which the court on the trial admitted over defendant's objection that to introduce the same violated his constitutional right not to be required to testify against himself. This document was Exhibit C, and the portion of the same used as evidence by the prosecution is as follows: "That on said 8th day of March, 1932, certain chattels and personal property, among them being certain jugs, bottles and containers, and the contents thereof, all of which were owned and in the possession and control of this affiant, were illegally and unlawfully seized by said prohibition agents, and this affiant illegally and unlawfully deprived of the ownership, possession and control thereof." This question is not argued in the brief, but is covered by the third assignment of error referring to the court's denial of the motion to strike all the evidence.

In discussing the sufficiency of the evidence to warrant submitting the case to the jury, we will exclude consideration of Exhibit C.

The evidence in the case is brief. Two prohibition agents and investigators of the Prohibition Bureau of the Department of Justice testified on behalf of the government. Defendant did not introduce any evidence. Agent Perkins testified that on March 7, 1932, he went to the residence of one Pearson in Minneapolis, and was informed by Pearson that his bootlegger would be at the Pearson home between 2:30 and 3 o'clock on the afternoon of the following day and would make a delivery of ten gallons of moonshine whisky at a cost of $30. Pearson seems to have been acting with the prohibition agents as an informer. At about 2:15 o'clock the next day Perkins returned to the Pearson residence, having arranged with other prohibition agents and investigators, to wit, Knutson, Weld, and Miller, to be in the vicinity of the Pearson residence to watch events. At about 3 p. m. of that day Knutson, Weld, and Miller stationed themselves in an automobile near the Pearson residence where they could observe the front and rear of the premises. At about 3 p. m. defendant appeared at the Pearson residence and was

950

introduced to Agent Perkins by Pearson. Defendant asked Perkins where his car was located, and was informed that it was out in front. Inquiry was made by defendant as to whether Perkins had the money to pay for the liquor. Upon being informed that he had, he told Perkins that he had the liquor out back in the alley in a green car, "an old Chevrolet." He instructed Perkins to drive his car around the back way, and the liquor would be unloaded from his car to Perkins' car. He pointed out the car in the back yard. Perkins gave a signal to Pearson to advise the other agents that delivery of the liquor was about to be made, which he did by a prearranged signal. Getting into his own car, Perkins drove around to Third Avenue Northeast, and, when he reached the alley leading to the Pearson property, he met the defendant "driving out with his car." He was advised by defendant "that he had unloaded the liquor and placed it in a coal shed," and was told to bring his car into the yard and "we will unload it from the coal shed into your car." Perkins drove his car into the back yard, and testifies that he there saw defendant and Pearson dragging two large gunny sacks out of the coal shed. These gunny sacks upon subsequent examination were found each to contain a five-gallon jug filled with white moonshine whisky. After the signal was given by Pearson to Knutson, Weld, and Miller, they drove into the alley and entered the back yard, seized the liquor which was in the control at that time of Pearson and defendant, who were transferring it from the coal shed preparatory to loading it on Perkins' car. Knutson testifies that he observed shortly before 3 o'clock a Chevrolet car driven into the alley, which was in the rear of the Pearson premises, and that it shortly afterwards returned and was parked on Third Avenue Northeast about three hundred feet away; that he saw defendant get out of the car and go back into the driveway.

There was no search of anything. The officers were lawfully on the premises. They were not defendant's premises. They saw the defendant handling the gunny sacks which under all the circumstances they had abundant reason to believe contained whisky. Defendant had admitted to one of the officers that the whisky was in his car and pointed out the car. The car had not been in the yard thirty minutes before that time. Defendant was in the very act of consummating the transportation and delivering the liquor to Perkins when he was arrested and the liquor seized. It would seem there was sufficient evidence for the jury to pass on the question of illegal transportation. The illegal possession was beyond any question.

Whether the introduction of a portion of the affidavit, Exhibit C, was proper, need not be determined, for there is ample evidence wholly aside from the affidavit to warrant conviction. This is a case in which a jury was waived, and therefore, if immaterial or incompetent evidence was introduced, it does not necessarily result in a reversal. There is a presumption that, where a court sits in place of the jury, it acts only on the basis of proper evidence, and if, exclusive of the questioned evidence, there is sufficient to warrant a judgment of conviction, the case will not be reversed because some improper testimony has been admitted. The court will decide the case as if such testimony had not been admitted. Clark v. United States (C. C. A. 8) 61 F.(2d) 695; Swepston v. United States (C. C. A. 6) 251 F. 205; Sinclair et al. v. United States, 279 U. S. 749, 49 S. Ct. 471, 73 L. Ed. 938, 63 A. L. R. 1258. Certainly there could be no prejudice in the introduction of Exhibit C, for the judge would have to read the affidavit in order to pass on the motion. Its introduction in evidence added nothing to the court's knowledge. Further, defendant agreed that the motion to suppress should be heard at the time of the trial. Hence it is apparent that defendant had no fear of any prejudice from the affidavit. We find no error in this record warranting reversal of this conviction, and the judgment of the trial court is affirmed.