### KURECKI et al. v. BUCK.
### No. 5027.

Circuit Court of Appeals, Seventh Circuit.
June 1, 1934.

Rehearing Denied June 29, 1934.

William H. Katt and James A. Donnelly, both of Chicago, Ill., for appellants.

George G. King, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

This is an appeal from the order of the District Court dismissing appellants' petition for the allowance of a claim for a preference in the distribution of the assets of a failed national bank.

The evidence discloses the following facts: That Paul Kurecki, deceased, in his lifetime deposited certain securities in a safety deposit box in the Calumet National Bank. After his death, two of his sons were appointed administrators. The father and his son Mike had purchased securities together and it was claimed that the securities in question belonged to Mike Kurecki. A joint examination of a box was made by permission of the vice president and trust officer of the bank. Among the securities was one mortgage, the proceeds of which are involved in this hearing. Mike Kurecki and appellants both claimed ownership of the mortgage. Upon a petition in the probate court by the administrators to determine the ownership of securities, Mike Kurecki answered. The court found that the particular mortgage belonged to the administrators. An appeal was prosecuted to the circuit court of Cook county with the same result.

Prior to the 13th of June, 1932, the mortgagor wished to pay the mortgage. He gave Ryan, attorney for Mike Kurecki, a check for the amount of the mortgage and Ryan called Donnelly, attorney for the administrators, to meet him on Saturday evening at the Calumet National Bank. The check was drawn on another bank. The purpose of the meeting was to get the proceeds of the check and make

a disposition of the money in some way for the benefit of the real owner. The business was transacted at the desk of Mr. Masters, vice president and trust officer of the bank, just before closing time Saturday night. The check was indorsed and delivered to Masters, who was to collect it and hold the money to be paid either to Mike Kurecki or the administrators of his father's estate, according to the order of the probate court.

The purpose for which the check was given and the nature of the fund which it represented was fully known to the bank and Masters knew the money was to be held by the trust department of the bank for the benefit of the person or persons whom the court would find entitled to it. Several days after, there was sent to each of the attorneys a receipt and a letter concerning the money, a copy of which appears in the margin.[1] Both of the attorneys admitted that they had received the letters inclosing the receipt for the money. It will be observed that the receipt states that the money is represented by "Certificate of Deposit #16394 of the Calumet National Bank," then the statement of the purpose for which the money is held.

It is fairly well established by the evidence that, without any direction from either of the attorneys, the bank cashed the check and then issued a certificate of deposit. The letter asks each of the attorneys to state whether the receipt "is in accordance with your understanding of the matter" and asked for a letter for the benefit of the bank's files.

The Calumet National Bank of Chicago was closed by the Comptroller of the Currency, October 1, 1931, and appellee, Buck, appointed receiver. After the final adjudication as to the ownership of the fund, when demand was made for the money, the receiver produced the certificate of deposit and delivered it. The administrators then filed their petition against the receiver for payment of the amount of the fund as a preferred claim.

The issues raised were submitted to the court, which heard the evidence. After a full hearing, findings of fact and conclusions of law were filed. The court held that the deposit in question was a general deposit and denied the relief prayed.

The evidence was not voluminous and consisted very largely of the testimony of Attorneys Donnelly and Ryan and of Gishuiller, the manager of the trust department of the Calumet National Bank, later an employee of the receiver. The testimony of Donnelly and Ryan clearly showed that their purpose was to preserve and protect the money collected in satisfaction of the mortgage in a safe way for the benefit of the persons to whom it might belong.

Although their testimony does not concur in the exact manner by which this was to be accomplished, in any event the check in

---

[1] "Calumet National Bank of Chicago
    "Chicago, June 13, 1931.
"Mr. James A. Donnelly, Attorney for Bernard & Walter Kurecki, Administrators of the Estate of Paul Kurecki; and
"Mr. Gerald Ryan, Attorney for Mike Kurecki, Chicago, Illinois.
"Gentlemen: This is to acknowledge receipt, for safekeeping, of the sum of $3,347.50 represented by Certificate of Deposit #16394 of the Calumet National Bank. This money is to be held by us in safekeeping to await the final decision of the Probate Court as to the ownership at the time of the death of Paul Kurecki of a mortgage for $3,250.00 and accrued interest executed by D. J. O'Brien secured by Trust Deed to Chicago Title and Trust Co. which mortgage and notes were found in the box of Mike Kurecki in the Calumet National Safe Deposit Co.
"If the final decision of the Court is that Paul Kurecki owned the same at the date of his death, we are to deliver the said sum of $3,347.50 deposited with us to Bernard & Walter Kurecki, Administrators, or their order; but if the Court should determine that the said mortgage was the property of Mike Kurecki then we are to deliver said sum, so deposited, to Mike Kurecki, or his order.
                "Very truly yours,
"F. N. Gishuiller, Trust Department."

"Calumet National Bank of Chicago
    "Chicago, June 13th, 1931.
"Mr. James A. Donnelly, Attorney at Law, 100 N. La Salle Street, Chicago, Illinois.
"Dear Sir: Herewith, we hand you a form of receipt for the sum of $3,347.50 deposited with this Department by Mr. Gerald Ryan, of the firm of Peden, Murphy & Ryan, 9047 Commercial Ave., Chicago, said letter setting forth the terms under which the deposit is made.
"If this is in accordance with your understanding of the matter, we shall appreciate a letter from you, so stating, that our files may be complete.
"Cover for your reply is enclosed.
                "Very truly yours,
"F. N. Gishuiller, Trust Department.
"Enc.
"G/1"

the hands of the attorneys was indorsed to the bank for collection and, upon collection, the certificate of deposit in question was issued. The record is clear that Donnelly, representing the administrators, had said nothing about buying a certificate of deposit with the proceeds of the check. Ryan said that he saw the check and a copy of the letter sent to respective counsel by the trust department of the bank a day or so after the deposit of the check with the bank. The record is silent as to just how the certificate of deposit happened to be issued, but a very few days after, the trust officer, under the date of June 13, 1931, wrote to each of the attorneys reciting that a certificate of deposit had been issued for the amount of the check and was being held by the bank for the benefit of the persons heretofore described and the request was made by the trust department for an acknowledgment of the receipt of that notice as to whether the bank correctly understood the transaction. So, while there was no evidence as to just how and when the certificate of deposit was issued, beyond its date, the fact remains that it was issued and that each of the parties who had made the deposit with the bank had notice of the fact. Neither Donnelly or Ryan protested any fact contained in the letter of acknowledgment or the receipt of the bank for the check or the manner in which it was held. This becomes material inasmuch as the evidence does not show that the agreement between the parties on Saturday night was fully completed beyond an understanding that the proceeds of the check would be handled in the trust department to the complete satisfaction of everybody. The difficulty with appellants' contention that an oral contract was entered into between the bank and the parties depositing the check on the Saturday night when the deposit was made, is that the facts on which they rely as proof are insufficient. The conference was a hurried affair because it was the bank's closing time and the evidence tends to show that no complete contract was entered into at that time.

The only question with which this court can be concerned upon review is whether there was any substantial evidence to support the findings of the trial court. As we said in U. S. v. Tyrakowski, 50 F.(2d) 766, 771:

"While realizing that the evidence is not as convincing as we might wish or as we might require if we were the trier of the facts instead of a reviewer of the trier's facts, yet we cannot say under this record that there is no substantial evidence. * * * That is the test." See authorities there cited.

[2] Did the trial court correctly apply the law to the facts as it found them? This case is similar in many respects to the case of Keyes v. Paducah (C. C. A.) 61 F.(2d) 611, 86 A. L. R. 203, decided by the Sixth Circuit which sustains the trial court in its findings and holdings almost as aptly as if written for this case.

The decree of the District Court is affirmed.