## UNITED STATES v. NATIONAL BANK OF COMMERCE OF SEATTLE.
### No. 7431.

Circuit Court of Appeals, Ninth Circuit.

Nov. 19, 1934.

James M. Simpson, U. S. Atty., of Spokane, Wash., Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., and Wilbur C. Pickett, Sp. Asst. to the Atty. Gen.

Russell H. Fluent, of Seattle, Wash., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from a judgment of the District Court in favor of the plaintiff, appellee here, in an action against the United States upon a policy of war risk insurance in the sum of $10,000. A jury was impaneled to try the case, and, at the conclusion of plaintiff's evidence, defendant moved for a nonsuit, which was denied. At the conclusion of the case, the defendant again moved for a nonsuit, which was denied, and, as well, moved for a directed verdict, and the plaintiff likewise made such a motion; thereupon the jury was dismissed, and the court rendered judgment in favor of the plaintiff.

Appellant assigns as error the action of the court in denying its motions for nonsuit and for directed verdict; in excluding certain evidence offered by defendant; in the overruling of defendant's objection to hypothetical questions based upon the ground that the questions called for conclusions of witnesses as to the ultimate facts; and in entering judgment in favor of plaintiff.

Plaintiff, a laborer possessing a sixth grade education, entered the United States Army in 1916 at the age of 20 years, and saw service on the Mexican border for 6 months, after which he was transferred to Idaho. In November of 1917 he applied for, and was granted, a policy of war risk insurance in the sum of $10,000, and in the same month sailed overseas. While in France he was subjected to severe hardships and heavy artillery fire. He testified that exposure to the elements and to the hazards of war caused him to become ill. His head pained him; he lost weight; contracted a severe cough; ran a fever; and had sweats. At this time he was hospitalized for 90 days, and then was transferred to another hospital and convalescent camp, where he remained for 4 months. He said that he noticed no improvement in his condition while in the hospital; he continued to run a fever and to lose weight; he had poor appetite and suffered from nausea; had pains in his chest and coughed constantly. He sailed from France on January 17, 1919, for Newport News, Va., arriving on February 2d. He was taken sick upon boarding the boat and remained in the sick bay of the vessel for the entire voyage. Upon arrival in the United States, he was put in a camp hospital, and after 30 days there was removed to another hospital and put in the tuberculosis ward. From there he was transferred to Ft. Lewis, Wash., and received his discharge from the Army May 28, 1919. Premiums were paid on the insurance to include the month of May, 1919.

Apparently plaintiff was a very sick man while in the Army, for we have many medical cards, clinical records, and reports of physical examinations, which are from the files of the War Department. The ailments range from heart trouble and bronchitis to suspected tuberculosis and "tuberculosis,

pulmonary, chronic, active, middle and upper right and left apex." This latter notation was taken from his hospital transfer card upon his arrival from Newport News to Camp Wadsworth, S. C., and dated February 27, 1919. By April 9, 1919, there was a "change in diagnosis" to "inactive."

His attempts to work immediately following his discharge resulting in failures, he was examined at Boise, Idaho, and sent to Pierce's Tuberculosis Sanitarium in Portland, Or. In the report of the physical examination made at Dr. Pierce's Sanitarium, dated August 24, 1919, the diagnosis reads "Deep peribronchial tuberculosis with loss of strength and neurasthenia." The prognosis is listed as "good." In answer to the question in the report, "Is claimant able to resume former occupation?" the report reads, "No," and the same answer is given to the question, "Do you advise it?" Williams remained at Pierce's Sanitarium for about 40 days. In January of 1920 he was sent to the Veterans' Hospital at Palo Alto, Cal., where he remained for about 2 months, after which he was transferred to Whipple Barracks, Ariz., where he remained for another 2 months before being discharged. After this he went to Elcho, Wis., securing work on the public highway. This lasted, he testified, for about 15 days, when he left because he was too sick to work. In 1921 he was sent by the United States Veterans' Bureau to a veterans' hospital for treatment for tuberculosis. After a few days there, he went to another hospital, where he remained for another few days. After this, he did nothing for about a year. He moved from Wisconsin to Yakima, Wash., in December of 1923 and lived there until the spring of 1924. He secured another job which lasted for but a short time before he became too ill to continue. In May of 1924 he was sent to the Walla Walla, Wash., Hospital and was diagnosed as being afflicted with active tuberculosis. He was in and out of this hospital two or three times between May of 1924 and March of 1925. Between visits to the hospital in that year he tried to work, but was unable to do so. Later in 1925 he returned to Elcho, Wis., secured two jobs while there, but was unable to continue with either. He then went into the hospital at the National Soldiers' Home of Wisconsin, was placed in the tuberculosis ward for a few days, and then transferred to the Soldiers' Home department. After about 2 months, and in January, 1927, he returned to Elcho. He secured, and was unable to hold, three jobs, and then he went to Yakima, Wash. Here again we find him securing employment and after a short period being forced to quit. He attempted no more work until 1928. In that year he spent a month and a half in a hospital in Portland, Or. During 1929 and 1930 he worked for short periods in orchards near Yakima.

He further testified that he coughs considerably, has night sweats, has pains in chest, raises mucus, suffers from sleeplessness, and is nervous at all times.

On cross-examination it was brought out that he had been discharged from one hospital for drunkenness and from another for being absent without leave. It was further brought out that he went into vocational training in 1922 or 1923, and that after 17 days he left of his own accord.

Two of plaintiff's former employers testified, each to the effect that plaintiff left the work because of illness and inability to carry on. Both testified that plaintiff did not drink while working for them. Plaintiff's father testified to the complaints and symptoms observed, and further added that the plaintiff was very nervous and "would almost go into convulsions at times."

Four doctors were called to testify in behalf of the plaintiff, and, in answer to a hypothetical question which stated the departmental definition of total and permanent disability, and which included a history of the case, they each responded that it was his opinion that Williams was totally and permanently disabled as of the date of his separation from the service. One of the witnesses, a Dr. C. R. Duncan, testified that plaintiff was suffering from a chronic tubercular condition in an advanced stage, and that, in his opinion, the man should never engage in hard labor and that he could not engage in any kind of work continuously. Another, Dr. Royal B. Tracy, testified that he had examined Williams to determine his mental and nervous condition and found him to be suffering from asthenia, "which means a general weakening of the greater muscular physical system"; that this condition is always associated with neurasthenia, complete physical and nervous exhaustion of the system brought on as a result of severe mental shock or physical shock or both; that this was a permanent condition; and that even without tuberculosis plaintiff would not be able to work.

One of the defendant's witnesses, a Dr. Albert C. Feaman, testified that he found plaintiff suffering from tuberculosis, chronic, moderately advanced, healed and chronic bronchitis; that his examination of the plain-

tiff took place on August 11, 1931, and that there was no evidence of active tuberculosis. He further testified that in his opinion the plaintiff was not totally and permanently disabled and that he could engage in light labor. Another physician, testifying on behalf of defendant, said that he had examined plaintiff in 1924 and found no indication of tuberculosis. Defendant presented evidence by affidavit, deposition, and oral testimony of plaintiff's addiction to alcoholic stimulants and of his habit of becoming intoxicated. After objection by plaintiff, the deposition of a Dr. C. O. Decker, who had treated Williams in Crandon, Wis., was excluded upon the ground that the same contained evidence of a privileged character. The same ruling was had as to deposition of a Dr. Dailey, upon the same grounds.

The government's case closed, the defendant moved for a nonsuit, or, in the alternative, for a directed verdict. Plaintiff also moved for directed verdict. The court then dismissed the jury and returned his verdict in favor of the plaintiff, finding him to be totally and permanently disabled from February 2, 1919.

■ Objection was interposed by the government to each hypothetical question on the ground that it did not fairly and accurately set out the matters in evidence and upon the further ground that the answer called for a statement of ultimate fact and thus invaded the province of the jury. The objections were overruled and exceptions noted. Assignment of error relating to these objections is as follows: "The Court erred in denying the objection of defendant to the testimony of experts as to the ultimate facts, to which ruling defendant excepted and exception was allowed."

In view of our decision in Fidelity & Deposit Co. of Maryland v. U. S. ex rel. Woods, etc., 72 F.(2d) 828, decided September 7, 1934, an assignment in such form is insufficient, in that it does not set out the testimony as required by our rule 11.

■ Appellant, after leave given at oral argument, filed an application for leave to file amended assignments of error, setting forth the hypothetical question. Appellee filed objections to said application. Ordinarily, this request would be denied, but, in the view we have taken of the case, appellants' motion will be granted, and the amended assignments, attached to the application, considered as filed and made part of the record.

■ Under the opinion of this court, written by Judge Wilbur, in United States v. Stephens, 73 F.(2d) 695, decided November 13, 1934, the objections to the hypothetical questions calling for the opinions of medical witnesses should have been sustained, and, if the case had been determined by a jury, would have required reversal; however, this case was not tried to the jury, but, as stated above, was decided by the court.

"Where each party submits a motion for directed verdict, without qualification, the court is authorized to grant one or the other of the motions, and error cannot be predicated thereon, unless there was no substantial evidence to support the verdict. * * *" O'Brien's Manual of Federal Appellate Procedure (1933 Cum. Supp.) p. 21.

"The request made to the court by each party to instruct the jury to render a verdict in his favor was not equivalent to a submission of the case to the court without the intervention of a jury, within the intendment of sections 649, 700, Rev. St. As, however, both parties asked the court to instruct a verdict, both affirmed that there was no disputed question of fact which could operate to deflect or control the question of law. This was necessarily a request that the court find the facts, and the parties are, therefore, concluded by the finding made by the court, upon which the resulting instruction of law was given. The facts having been thus submitted to the court, we are limited, in reviewing its action, to the consideration of the correctness of the finding on the law, and must affirm if there be any evidence in support thereof." Beuttell v. Magone, 157 U. S. 154, 157, 15 S. Ct. 566, 567, 39 L. Ed. 654. See Williams v. Vreeland, 250 U. S. 295, 298, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038; Fidelity & Casualty Co. of N. Y. v. Martin, 66 F.(2d) 438, 440 (C. C. A. 9); Laredo Nat. Bank v. Gordon, 61 F.(2d) 906, 907 (C. C. A. 5). This latter case states the rule thus: " * * * As each party submitted a motion without qualification for a directed verdict, the court was authorized to grant one or the other of the motions, and error could not be assigned here, unless there was no substantial evidence to support the verdict. * * *" See, also, Moore v. Fain, 251 F. 573 (C. C. A. 6); La Crosse Plow Co. v. Pagenstecher, 253 F. 46 (C. C. A. 8).

In Anderson v. U. S., 65 F.(2d) 870, 872, the Court of Appeals for the Eighth Circuit said: "As the action was tried to the court without a jury, it will be presumed on appeal that the court considered only the competent evidence, so that we need not consider the challenged ruling of the court over-

ruling plaintiff's objection to the admission of this testimony. If the evidence objected to be disregarded, there is still ample competent evidence to support the findings made by the lower court. The record is clearly insufficient to entitle plaintiff to obtain a review of the court's conclusions. " * * "

See Sinclair v. U. S., 279 U. S. 749, 767, 49 S. Ct. 471, 73 L. Ed. 938, 63 A. L. R. 1258; Gardner v. U. S., 71 F.(2d) 63 (C. C. A. 9); Clauson v. U. S., 60 F.(2d) 694, 696 (C. C. A. 8); Tremont v. U. S., 65 F.(2d) 949, 950 (C. C. A. 8); Southern Pacific Co. v. Kalbaugh, 18 F.(2d) 837 (C. C. A. 9); Lahman v. Burnes Nat. Bank, 20 F.(2d) 897, 900 (C. C. A. 8).

There is ample evidence in the record to support the judgment, even should we eliminate the opinion evidence objected to.

There is no question but that there is substantial evidence of total and permanent disability, even before plaintiff's separation from the service, as indicated by the Army medical records, his stays in sanitariums, and his much-interrupted work record. The case of Nicolay v. U. S., 51 F.(2d) 170, 173 (C. C. A. 10), where recovery was denied because the tuberculosis was merely in the incipient stage at the time of discharge, and hence not permanent, is of no application here, because the disease had progressed to the place where it was described as "tuberculosis, pulmonary, chronic, active, middle and upper right and left apex." Less than three months after separation from service, his condition was diagnosed as "deep peribronchial tuberculosis with loss of strength and neurasthenia." The subsequent history of the case is valuable to the extent of showing the continuance of his condition, which was total disability, proving permanence. As was said in Carter v. U. S., 49 F.(2d) 221, 223 (C. C. A. 4): " * * * Not every case of tuberculosis constitutes a permanent disability; but where a case has continued as long as has that of the plaintiff here and has been attended with as many distressing symptoms, a reasonable man might well conclude that it would continue throughout the life of the insured." See, also, United States v. Kane, 70 F.(2d) 396 (C. C. A. 9).

While the Nicolay Case, supra, states: " * * * It is a matter of common knowledge that many such incipient tuberculars respond readily to the simple treatment of rest and nourishment; the activity is arrested, and, while there probably always will be a susceptibility of recurrence, they are able to, and do, live out their lives following gainful occupations."

It concedes that: "On the other hand, there are some that do not respond to treatment, and their condition is incurable from the start. * * * "

Falbo v. U. S., 64 F.(2d) 948 (C. C. A. 9) affirmed 291 U. S. 646, 54 S. Ct. 456, 78 L. Ed. 1042, may be distinguished from the instant case, in that there was no direct evidence that Falbo was suffering from tuberculosis until nearly a year after his discharge, and he had been working throughout that period.

Judgment affirmed.