**EL PASO & S. W. R. CO. v. PHELPS–DODGE MERCANTILE CO., and three other cases.**

Nos. 7341–7343.

Circuit Court of Appeals, Ninth Circuit.

Feb. 11, 1935.

Alexander B. Baker and Louis B. Whitney, both of Phœnix, Ariz., and James E. Lyons and Burton Mason, both of San Francisco, Cal., for appellants.

Fred J. Elliott and Frank L. Snell, Jr., both of Phœnix, Ariz., for appellees.

Before WILBUR and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

Involving similar facts and almost identical questions of law, these three appeals have been prosecuted for the purpose of having this court review judgments rendered in actions at law in which the appellants were defendants and the appellees were plaintiffs.

Because of such similarities, our observations herein, unless otherwise indicated, will apply equally to all three cases.

During the period between April 30, 1923, and June 1, 1928, the appellee in No. 7341, a New York corporation engaged in business in Arizona, received at Bisbee, Douglas, and Clifton, Ariz., 61 carload shipments of sugar, which had moved from various points of origin in California, and upon which freight charges were assessed by the appellant carriers at the contemporaneous commodity rates. The shipments to Bisbee and Douglas were all delivered on or before September 12, 1925, while those to Clifton moved at intervals during the entire period above mentioned.

On September 3, 1925, the appellee in No. 7341 filed a complaint with the Interstate Commerce Commission, hereinafter referred to as the "Commission," in which it was alleged that the appellants' rates on sugar, in carloads, from California points to the three Arizona destinations had been, and in future would be, unreasonable, in violation of section 1 of the Interstate Commerce Act (49 USCA § 1). The Commission was asked to determine what would have been or would be reasonable rates in lieu of those attacked, and to award reparation both upon past shipments and those moving pendente lite.

In No. 7342 the appellee, on August 14, 1923, filed a similar complaint before the Commission, attacking sugar rates charged by the carriers on 31 shipments that had moved from various California points to Bowie, Ariz., during the period between April 11, 1921, and December 10, 1923.

In No. 7343 the appellees' complaint was filed on March 6, 1925, and February 6, 1926, and covered 41 carload shipments of sugar received at Tucson, Ariz., which had moved from California points during the period between March 5, 1923, and May 1, 1928. All but three of the shipments were delivered on or before September 15, 1925. Those three shipments were delivered during March, April, and May, 1928.

On March 12, 1928, the Commission rendered its report in all these three cases, as well as in a number of others consolidated therewith, in which it declared inter alia that the rates attacked had been unreason-

able, and that reparation was due. Docket 16742, Traffic Bureau of Phoenix Chamber of Commerce et al. v. A., T. & S. F. Ry. Co. et al., 140 I. C. C. 171. Adopting the designation used in prior cases before this court, we shall hereinafter refer to that report as the "Third Phoenix Case," or "Docket 16742."

Following the report in the Third Phoenix Case, and as directed therein, all the appellees herein complied and submitted to the Commission tabular statements, known as "Rule V Statements," setting forth essential information as to the shipments upon which reparation was claimed. On September 7, 1929, April 14, 1930, and April 13, 1931, the Commission entered supplementary orders, directing payments of reparations, in specified amounts, to all the appellees.

The carriers in all three cases declined to comply with the reparation orders, and thereupon the present suits were commenced, pursuant to section 16 (2) of the Interstate Commerce Act (49 USCA § 16 (2).

The cases were tried by the court below sitting without a jury, trial by jury having been duly waived in writing.

After making special findings of fact and conclusions of law, largely as proposed by the appellees, and rejecting those proposed by the appellants, the court below rendered judgments substantially as demanded in the respective complaints, and awarded interest and allowances of 20 per cent. of the total sum of principal and interest as attorneys' fees. The cases now come to this court on appeals from those judgments.

The primary defense urged by the appellants in each of these three cases is that the rates and charges now under attack conformed to prior formal declarations by the Commission dealing with the same transportation services, and that the present award was therefore beyond the Commission's power.

On April 15, 1914, the Arizona Corporation Commission filed a complaint with the Interstate Commerce Commission, attacking as unreasonable the rates on sugar and sirup in straight or mixed carloads from all producing points in California to all destinations in Arizona. The proceeding is reported as docket 6806, Arizona Corporation Commission v. A., T. & S. F. Ry. Co. et al., 34 I. C. C. 158. While Docket 6806 was pending, but before its final submission, the defendant carriers in that case voluntarily reduced their rates from virtually all California producing points to all important destinations in Arizona, including the five destinations involved in the instant cases; namely, Bisbee, Douglas, Clifton, Bowie, and Tucson. These reductions included the publication of lower rates than those previously in effect, and the initiation of rates upon still lower levels, subject to an increased minimum carload weight of 60,000 pounds. As thus established, the reduced rates became 55 cents per hundred pounds to each of the five destinations just mentioned, except Clifton, which took a rate of 86 cents.

No reparations had been asked for in that case. In its report, which was handed down on May 25, 1915, the Commission took notice of the reductions just referred to, and held that, with certain exceptions not here involved, "the rates on sugar and sirup in straight carloads from points in California to points in Arizona in effect at the time of the hearing have not been shown to be unreasonable to a greater extent than the amounts of the reductions since made."

The appellants contend that the rates assessed upon the shipments on which reparation is sought here were, in all instances, equal to or less than the rates approved as reasonable by the Commission in docket 6806, as modified in response to certain orders of the Director General of Railroads, head of the United States Railroad Administration, and to the recommendations of the Commission. Certain further and voluntary reductions had been also made by the carriers.

In our view of the case, we are not concerned with the changes in the rates that had been theretofore approved by the Commission in 1915, whether such changes were ordered by the Director General of Railroads or the Commission, or were voluntarily made by the carriers themselves.

Even from the appellants' own recital of the increases in rates alleged to have been authorized by the Commission or by the Director General of Railroads it is quite apparent that none of those authorizations purported to prescribe or approve any specific rates. At most, all such authorized increases were expressed in percentages or as "flat advances," thus requiring some base rate upon which such percentages or flat advances were to be computed.

We stress this fact, for the reason that, at the time of those alleged authorized advances, there was no sugar base rate that had been authorized by the Commission, to which base rate the above increases could be added. The report of May 25, 1915, 34 I. C. C. 158, supra, continued in force until May 25, 1917. When that report was handed down, and for two years thereafter, the duration of an order of the Commission was limited to two years. Section 12 of the Act of June 18, 1910, amendatory of the Act to Regulate Commerce (section 15, as amended by Act June 29, 1906, § 4), provided in part as follows (36 Stat. 551): "All orders of the commission, except orders for the payment of money, shall take effect within such reasonable time, not less than thirty days, and shall continue in force for such period of time, not exceeding two years, as shall be prescribed in the order of the commission, unless the same shall be suspended or modified or set aside by the commission, or be suspended or set aside by a court of competent jurisdiction."

See, also, Eagle Cotton Oil Co. v. Southern Ry. Co. (C. C. A. 5) 51 F.(2d) 443, 444, certiorari denied, 284 U. S. 675, 676, 52 S. Ct. 130, 76 L. Ed. 571.

On February 28, 1920, the foregoing section was amended, and the law now provides that orders of Commission "shall continue in force until its further order, or for a specified period of time, according as shall be prescribed in the order, unless the same shall be suspended," etc. 41 Stat. 485, 49 US CA § 15 (2), and historical note on page 420.

The appellants, however, insist that they "do not here rely at all upon the *order* made in Docket 6806," but that "their defense is based upon the express *finding* [of approval of the rates then in effect] there made by the Commission." They further contend that "the two-year limitation did not apply to the finding upon which defendants rely."

We cannot agree with this latter statement. The appellants concede that "the order refers to and by such reference includes the opinion." With such an order and opinion of the Commission before us, in Arizona Wholesale Grocery Co. v. Southern Pacific Co., 68 F.(2d) 601, 609, we said:

"The appellant argues earnestly that the order in the Graham Case [Graham & Gila Counties Traffic Ass'n v. Arizona Eastern R. Co., 81 I. C. C. 134] is silent as to the reasonableness of the rates to Globe, and that therefore the commission cannot be understood to have taken any 'legislative action on the question of reasonableness of rates for the future.'

"Two short answers may be made to this contention. First, the order in the Graham Case specifically, as we have seen, makes the report a part thereof; and in the report the question of unreasonableness is treated. Second, the Supreme Court, in the Arizona Grocery Case [Arizona Grocery v. Atchison, etc., R. Co., 284 U. S. 370, 52 S. Ct. 183, 76 L. Ed. 348], has recognized the essential unity of a report and an order promulgated by the commission:

"'The Commission may, and often does, in the same proceeding, and *in a single report and order,* exercise its additional authority by fixing rates or rate limits for the future.' (Page 388 of 284 U. S., 52 S. Ct. 183, 186.)"

In this connection, it should be pointed out that the Graham Case, referred to in the above excerpt, and relied upon by this court in the Wholesale Grocery Case, supra, as having approved certain sugar rates as reasonable, was decided by the Commission on June 27, 1923, long after the two-year limitation had been removed by the statute. Graham & Gila Counties Traffic Association v. A. E. R. R. Co. et al., 81 I. C. C. 134, 143. In the Wholesale Grocery Case, therefore, we were not confronted with the same problem that is now presented; and it was proper to consider the Commission's prior finding of reasonableness, as embodied in the Graham Case.

Accordingly, we hold that the Commission's report and order in docket 6806, supra, of May 25, 1915, in which certain rates on sugar and sirup from California points to many points in Arizona were found not to have "been shown to be unreasonable," did not deprive the Commission of jurisdiction to declare unreasonable the rates charged more than two years thereafter which are involved in the instant cases.

The foregoing observations are pertinent only to the rates from California points to Bisbee, Clifton, Bowie, and Tucson. Other considerations apply to the rates to Douglas.

On November 3, 1921, in Traffic Bureau of Douglas Chamber of Commerce and Mines v. A., T. & S. F. Ry. Co. et al., 64 I. C. C. 405, 415, Docket 11442, the Commission decided that the rates then before it had not been shown to be unreasonable. In that case the complainant alleged "that the class rates, and commodity rates, except on

fresh fruits and vegetables, from points on the lines of defendants, in California," etc., to Douglas were "unjust, unreasonable, unjustly discriminatory, and unduly prejudicial." No reparation was asked. Rates on sugar from California to Douglas were specifically mentioned in the Commission's report.

In that report the following language was used: "No sufficient evidence has been presented that the rates attacked are unreasonable, or that they are unduly prejudicial," etc.

It will be observed that this report was handed down by the Commission after the removal of the two-year statutory limitation referred to above.

We are not impressed with the efforts of the appellees to distinguish docket 11442 from the Graham Case, supra, upon which we relied for the prior finding of reasonableness in the Wholesale Grocery Case, supra. In the Graham Case the Commission's finding read as follows: " * * * The record in the instant case does not support a finding of unreasonableness."

In the Wholesale Grocery Case this court, after extensively reviewing other reports of the Commission where similar language had been used, found that such language had been construed as an affirmative finding of reasonableness. We pointed out that such a construction had been adopted by the Commission itself, by the Supreme Court, and by other federal courts.

If the language in the Graham Case could be interpreted as "a positive finding of a negative fact"—namely, that the rates there assailed were not unreasonable—it is difficult to see why a similar construction should not be given to the Commission's finding as to unreasonableness in the Douglas Case, docket 11442.

The record shows that, at the time the report in docket 11442 was handed down, the rate on sugar from California points to Douglas was 96 cents per hundred pounds. The rates charged, resulting in the preparation award herein, were 86½ and 84 cents.

■ Accordingly, since the rates to Douglas charged by the appellants were lower than those which had theretofore been approved by the Commission in docket 11442, we hold that the Commission was without jurisdiction to award reparation thereon.

■ The appellants seek to apply the same reasoning to the Bisbee rates, declaring that docket 11442 "constituted also an approval of the rates from California points to Bisbee." This contention is based upon the assertion that the rates to Bisbee and to Douglas "had consistently been maintained at the same levels, the hauls to Bisbee and Douglas being substantially identical."

We have no desire, however, to extend our reasoning in the Wholesale Grocery Case to facts unlike those that were there considered; particularly so since in docket 11442 the Commission said: "This finding is confined to the strict issue before us and to the evidence of record and is not to be understood as direct or indirect approval of the adjustment under which certain commodity rates eastbound are blanketed from Arizona points all the way to the Atlantic seaboard." Page 415 of 64 I. C. C.

■ Finally, it should be made clear that the mere fact that the Commission's award of reparation in docket 16742 has been found to be invalid as to certain Arizona destinations, by the Supreme Court and by this court, does not prevent reparation as to other Arizona destinations covered by the same docket from receiving judicial approval. Spiller v. A., T. & S. F. Ry. Co., 253 U. S. 117, 132, 40 S. Ct. 466, 64 L. Ed. 810.

We now take up the question of the weight that should be accorded to the Commission's determination in docket 16742, supra, of the unreasonableness of the rates charged by the appellants, as to all the destinations involved herein, with the exception of Douglas.

■ It is settled, of course, "that a shipper seeking reparation predicated upon the unreasonableness of the established rate must, under the act to regulate commerce, primarily invoke redress through the Interstate Commerce Commission, which body alone is vested with power originally to entertain proceedings for the alteration of an established schedule, because the rates fixed therein are unreasonable." Texas & Pacific Ry. v. Abilene Cotton Oil Co., 204 U. S. 426, 448, 27 S. Ct. 350, 358, 51 L. Ed. 553, 9 Ann. Cas. 1075. See, also, Interstate Comm. Com. v. Chi., R. I. & Pac. Ry., 218 U. S. 88, 110, 30 S. Ct. 651, 54 L. Ed. 946; Loomis v. Lehigh Valley R. R., 240 U. S. 43, 49, 36 S. Ct. 228, 60. L. Ed. 517; Board v. Great Northern Ry., 281 U. S. 412, 422, 50 S. Ct. 391, 74 L. Ed. 936; Standard Oil Co. v. United States, 283 U. S. 235, 239, 51 S. Ct. 429, 75 L. Ed. 999; Lewis, etc., Co. v. Southern Pacific Co., 283 U. S. 654, 661, 51 S. Ct. 592, 75 L. Ed. 1333.

As to the effect to be given to the Commission's finding of unreasonableness in Mitchell Coal & Coke Co. v. Penna. R. R. Co., 230 U. S. 247, 257–264, 33 S. Ct. 916, 920, 57 L. Ed. 1472, the court said:

"But where the suit is based upon unreasonable charges or unreasonable practices, there is no law fixing what is unreasonable and therefore prohibited. In such cases the whole scope of the statute shows that it was intended that the Commission, and not the courts, should pass upon that administrative question. When such order is made, it is as though the law for that particular practice had been fixed, and the courts could then apply that order, not to one case, but to every case,—thereby giving every shipper equal rights and preserving uniformity of practice. Section 9 [49 USCA § 9] gives the plaintiff the option of going before the Commission or the courts for damages occasioned by a violation of the statute. But since the Commission is charged with the duty of determining whether the practice was so unreasonable as to be a violation of the law, the plaintiff must, as a condition to his right to succeed, produce an order from the Commission that the practice or the rate was thus unreasonable, and therefore illegal and prohibited. * * *

"Such orders, so far as they are administrative, are conclusive, whether they relate to past or present rates, and can be given general and uniform operation, since all shippers who have been or may be affected by the rate can take advantage of the ruling and avail themselves of the reparation order. They are quasi judicial and only *prima facie* correct in so far as they determine the fact and amount of damage, —as to which, since it involves the payment of money and taking of property, the carrier is, by section 16 of the act, given its day in court and the right to a judicial hearing (March 2, 1889, 25 Stat. 855, 859, c. 382). * * *

"For the courts are no more authorized to determine the reasonableness of an allowance for a haul over a spur track, between mine and station, than they are to pass upon the reasonableness of a rate for a haul, over a trunk line, between station and station. What is or was a proper allowance is not a matter of law until after it has been fixed by the rate-regulating body. The courts can then apply that law, and, measuring what has been charged by what the Commission declares should have been charged, can award damages to the extent of the injuries occasioned by the payment of the allowance found to have been unreasonable and unlawful."

See, also, Int. Comm. Com. v. Union Pacific R. R. Co., 222 U. S. 541, 547, 548, 32 S. Ct. 108, 56 L. Ed. 308; Manufacturers' Ry. Co. v. United States, 246 U. S. 457, 488, 489, 38 S. Ct. 383, 62 L. Ed. 831; Pennsylvania R. R. Co. v. Weber, 257 U. S. 85, 90, 42 S. Ct. 18, 66 L. Ed. 141; Virginian Ry. v. United States, 272 U. S. 658, 665, 666, 47 S. Ct. 222, 71 L. Ed. 463; Assigned Car Cases, 274 U. S. 564, 580, 581, 47 S. Ct. 727, 71 L. Ed. 1204; South Carolina Asparagus G. Ass'n v. Southern Ry. Co. (C. C. A. 4) 64 F. (2d) 419, 421, certiorari denied, 290 U. S. 647, 54 S. Ct. 65, 78 L. Ed. 561; Glens Falls Portland C. Co. v. Delaware & Hudson Co. (C. C. A. 2) 66 F.(2d) 490, 493, 494, certiorari denied, 290 U. S. 697, 54 S. Ct. 132, 78 L. Ed. 599.

It should be noted that the appellants did not introduce at the trials of the present cases the evidence that had been presented to the Commission in docket 16742. In such a situation, "the settled rule is that the findings of the Commission may not be assailed upon appeal." Miss. Valley Barge Co. v. United States, 292 U. S. 282, 286, 287, 54 S. Ct. 692, 693, 78 L. Ed. 1260.

The reasonableness of a freight rate is a question of fact. Illinois Central R. R. v. Inter. Comm. Com., 206 U. S. 441, 455, 27 S. Ct. 700, 51 L. Ed. 1128.

The court below concurred with the Interstate Commerce Commission in the latter's finding that the rates charged had been unreasonable, determined the reasonable rates that should have been charged, and fixed the appellees' damages resulting from the appellants' refusal to pay the reparations ordered by the Commission.

As to this phase of the question, therefore, we must decide solely whether or not there was substantial evidence to support the finding of the lower court, sitting without a jury. Bayless v. Eager (C. C. A. 8) 69 F.(2d) 269, 272; Mandel Bros. v. Henry A. O'Neil, Inc. (C. C. A. 8) 69 F.(2d) 452, 455; Kurecki v. Buck (C. C. A. 7) 71 F. (2d) 227, 229; United States v. Linde (C. C. A. 10) 71 F.(2d) 925.

Applying the foregoing rule to the instant cases, we find that the appellees introduced in evidence without objection on the part of the appellants copies of the Commission's opinion and orders in docket 16742

and associated cases, and of rule V statements, showing the details of the shipments on which reparation was sought. The appellants' affirmative showing, addressed to the question of the reasonableness of the rates, consisted primarily of several exhibits containing rate comparisons, supplemented by the oral testimony of J. L. Fielding, a traffic officer of one of the appellants. Both sides offered in evidence certain decisions of the Commission.

■■■■ We are of the opinion that the evidence in the court below "substantially supported" the findings and the judgments herein.

The appellants also contend that the evidence offered by the appellees, other than the reparation findings and orders, "was largely incompetent." The attacks on the appellees' evidence center chiefly upon exhibits consisting of tabular statements of rates and distances. It is not necessary to discuss these contentions, since we find that, aside from the evidence thus assailed, there was substantial evidence to support the court's findings and judgments. We do not believe that the appellants' evidence destroyed the prima facie case made out by the appellees, as to "the fact and amount of damage." As to the reasonableness of the rates, the findings of the Commission are conclusive, especially "in the absence of the evidence upon which they were made." Mississippi Valley Barge Case, supra.

In Cascaden v. Bell, 257 F. 926, 930, the late Judge Gilbert of this court said: "The case having been tried by the court without a jury, the improper admission of evidence, if any such was admitted, is not ground for reversal, where, as here, there is other evidence in the record sufficient to sustain the findings of the court."

See, also, Hall v. United States (C. C. A. 5) 267 F. 795, 799; Chicago Bonding & Ins. Co. v. City of Pittsburg, Kan. (C. C. A. 8) 271 F. 678, 679; Gardner v. United States (C. C. A. 9) 71 F.(2d) 63, 64–65; U. S. v. Nat'l Bank of Commerce (C. C. A. 9) 73 F.(2d) 721, 725.

The appellants insist that the enforcement of the reparation findings and orders "would create unlawful discriminations" as between shippers or between destinations.

■■■■ A short answer to this contention is that the appellants are not in a position to raise the question of discrimination. In the Rock Island Case (Interstate Commerce Comm. v. Chicago, R. I. & P. R. Co.) supra, at page 109 of 218 U. S., 30 S. Ct. 651, 659, the court said: "That the companies may complain of the reduction made by the Commission so far as it affects their revenues is one thing. To complain of it as it may affect shippers or trade centers is another. We have said several times that we will not listen to a party who complains of a grievance which is not his."

■■■■ Finally, the appellants in Nos. 7341 and 7342 "ask this Court to conclude that the trial Court erred in awarding the attorneys' fee[s]" incorporated in the judgments, at least to the extent that they exceed the amounts demanded in the complaints.

We need not discuss this contention in detail. Suffice it to say, section 16 (2) of the Interstate Commerce Act (49 USCA § 16 (2) provides that: "If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." In Mellon v. World Pub. Co. (C. C. A. 8) 20 F.(2d) 613, 618, 619, certiorari denied, 275 U. S. 561, 48 S. Ct. 119, 72 L. Ed. 426, the court stated, with reference to the provision in question: "Nor is it a part of the damage to the shipper, and thus an element in the cause of action itself. It is made a part of the costs and recoverable only as such. Not being a part of the cause of action, it need not be pleaded. It is not a subject on which issue can be joined. Its allowance is dependent on a determination of the issues in plaintiff's favor."

We find no error in the allowances for attorneys' fees.

Accordingly, the judgments in Nos. 7342 and 7343 should be affirmed. The judgment in No. 7341 should be reversed, in so far as it awards reparation for rates charged on shipments to Douglas, Ariz. In all other respects, the judgment in No. 7341 should be affirmed.

Judgments affirmed, as modified.