## STANDARD BRICK & TILE CO. et al. v. MACON, D. & S. R. CO. et al.

### No. 8094.

Circuit Court of Appeals, Fifth Circuit.

Nov. 10, 1936.

Cubbedge Snow, of Macon, Ga., for appellants.

Charles Akerman and J. E. Hall, both of Macon, Ga., and R. B. Gwathmey, of Wilmington, N. C., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellants in July and August, 1932, complained of rates on brick and tile from points in Georgia and Alabama to various Florida peninsula points. New rates were made effective January 13, 1933, and reparation was later awarded in a report[1] dealing only with the prayer for reparation, including shipments moving pendente lite. Suing on this award, and submitting their case on jury waiver, appellants suffered a general adverse finding and judgment.

They appeal, asserting that the ground of the judgment against them was the erroneous view the court took that the assailed rates as to which reparation was awarded, were Commission-made within Arizona Wholesale Grocery Co. v. Atchison, T. & S. F. R. Co., 284 U.S. 370, 52 S. Ct. 183, 76 L.Ed. 348.

Appellees, insisting that the award was unauthorized because the rates were Commission-made, urge also that on the face of the report the award was arbitrary and based upon an illegal and invalid finding of unreasonableness.

The evidence consisted of various tariffs and findings, reports, and orders of the Interstate Commerce Commission in various proceedings. Nothing submitted by defendants in any manner impeached or overcame the prima facies of the reparation order, if there was jurisdiction to make it. The case stood at last for decision upon defendants' contention urged before and rejected by the Commission, that reparation could not be awarded because the rates complained of were Commission-made.

Made effective by tariffs established April 16, 1930, after the report and order in the second hearing of the Southern Brick Case,[2] had condemned rates exceeding 80 per cent. of the uniform brick list prescribed in the General Brick Case,[3] they were constructed on the Jacksonville combination basis, that is, the sum of the rate to Jacksonville, less 3 cents and the rate from Jacksonville to destination less one cent. In the proceedings out of which the reparation order issued the use of the Jacksonville basis was condemned, the rates assailed were found unreasonable on and after November 1, 1930, to the extent that they exceeded rates, based upon the application of the distance scale prescribed in the Southern Brick Cases,[4] to the entire distance, plus certain arbitraries set out in the Dann-Gerow Case.[5]

Appellees urge that to condemn the Jacksonville combination for the future was

---

[1] Standard Brick & Tile Co. v. Atlanta, B. & C. R. Co. et al., 197 I.C.C. 637.

[2] Brick and clay products from, to, and between points in the Southern Territory, 155 I.C.C. 730.

[3] National Paving Brick Manufacturers Ass'n et al. v. Alabama & V. R. Co., 68 I.C.C. 213.

[4] 88 I.C.C. 543; 155 I.C.C. 730.

[5] 161 I.C.C. 673.

one thing, to award reparation on the basis of its past use quite another. They insist that its use as a factor in tariffs made up to comply with the orders in the General Brick and the Southern Brick Cases had been specifically approved by the Commission, and the rates resulting from its use were therefore not carrier-made, but Commission-prescribed.

Appellants, on their part, insist that the orders in the General and Southern Brick Cases were not orders prescribing specific rates within the Arizona Wholesale Grocery Case, but merely general orders, like those in Texas & P. R. Co. v. Louisiana Oil Refining Corporation (C.C.A.) 76 F. (2d) 465, and therefore the rates under attack were not Commission, but carrier-made. They insist, further, that whatever might have been said on this score if the tariffs had been constructed on the distance scale actually prescribed in those cases, the use of the Jacksonville combination in making them up was the voluntary act of the carriers, and the rates resulting from its use were carrier-made and the proper subject of reparation award.

In support of this position appellants rely on the permissive, rather than mandatory nature of the reference to the use of the Jacksonville basis in the reports of those cases and of cases referring to them. They rely, too, on the vigorous and downright condemnation of its use in a number of later Commission cases; Southern Cement Rates, 132 I.C.C. 427; Fertilizers Between Southern Points, 113 I.C.C. 389; Rates on Chert, Clay, etc., 140 I.C.C. 85; Dann-Gerow v. Alabama G. D. R. Co., 161 I.C.C. 673; Yeates Co. v. Atlantic Coast Line R. Co., 167 I.C.C. 463, 465; Dickey Clay Mfg. Co. v. Atlanta, B. & C. R. Co. (Columbus Brick & Tile Case), 185 I.C.C. 639.

Appellees, invoking Arizona Wholesale Grocery Co. v. Southern Pacific Co. (C.C.A.) 68 F.(2d) 601, El Paso & Southwestern R. Co. v. Phelps-Dodge Mercantile Co. (C.C.A.) 75 F.(2d) 873, argue that the failure of the Commission in the Southern Brick Case to disapprove the use of the Jacksonville basis and its approval of the tariffs made by its use was, within those cases, a finding of its reasonableness, and the rates constructed in accordance with it were therefore Commission-made. They point to the continuous use of the Jacksonville combination in the Brick Cases without disapproval by the Commission, the language of the Commission in the Southern Brick Case regarding that use, the interpretation the Commission put on that decision in subsequent cases,[6] and the fact that though, in the cases appellants rely on, the Jacksonville combination was condemned for the future, in none of them except in the Columbus Case, 185 I.C.C. 639, and in the case at bar was reparation awarded. They insist that these considerations put beyond question that the assailed rates made up by the use of the Jacksonville combination are Commission-prescribed rates. These are the facts with regard to the brick case litigations.

In the General Brick Case, 68 I.C.C. 213, decided April 4, 1922, the Commission prescribed and required the establishment of distance rates in accordance with a uniform brick list. The carriers, including defendants, undertook to conform by publishing a general revision of interstate rates on articles included in this list to all points in the Southern territory. In the revision which was published and became effective August 15, 1923, the rates to and from points in the Florida peninsula were made on the Jacksonville combination by the publication in separate tariffs of proportional rates to and from Jacksonville for application on through traffic. The rates to Jacksonville for beyond[7] on shipments destined to points in the Florida peninsula were made 3 cents less than the local rates on shipments destined for Jacksonville proper. The rates applicable to that part of the movement south of Jacksonville[8] were made 1 cent lower than the local rates for like distances north of Jacksonville.

By its order of August 15, 1923, the Commission suspended the operation of both of these tariffs and entered upon a hearing as to the lawfulness of the proposed rates. On April 15, 1924, the Commission, in the first Southern Brick Case, 88 I.C.C. 543, issued its report and finding: "That the rates proposed in the suspended schedules have not been justified.

---

[6] Basing Rates on Paving Brick from Jacksonville, Florida, to Florida Points, 100 I.C.C. 390; Yeates Co. v. Atlantic Coast Line R. Co., 167 I.C.C. 463.

[7] Glenn's I.C.C. a-422.
[8] Glenn's I.C.C. a-368.

An order will be entered requiring the cancellation of the suspended schedules. We further find that the carload rates on brick and other clay products included in the uniform brick list, and on common brick from, to, and between points on and south of the Ohio and Potomac Rivers, and on the east of the Mississippi River are, and for the future will be, unreasonable to the extent that they exceed rates based on the distance scales shown in Appendix A; provided; that for distances not exceeding 150 miles the carload rates on common brick, as defined in the General Brick Case, when loaded to market capacity of the car, shall not exceed 80 per cent. of the contemporaneous rates on articles included in the uniform brick list. Using the rates herein found reasonable as a basis, respondents will be expected to establish rates in accordance with the general plan pursued in publishing the suspended rates."

By its order the respondents were directed to establish and thereafter maintain and apply to the interstate transportation of brick and clay products included in the uniform brick list and to common brick in carloads from and to points on their lines designated in the schedules required by this order to be canceled, carload commodity rates not in excess of those shown per 100 pounds in the table annexed to the order.

Of the plan upon which the rates ordered canceled had been constructed, and the use in it of the Jacksonville combination, the Commission said: "The general basis upon which rates on classes and commodities have been constructed to and from points in Florida has been the combination of separate factors applying to and beyond Jacksonville. Originally protestants made some objection against this method of constructing rates on brick, contending that the application of the scale to Florida points should be made on the basis of continuous mileage. Respondents detailed the different conditions, operating and otherwise, existing in the peninsula of Florida and urge that the general method of construction now in effect should be continued. They do not propose the full combination but proportional rates to Jacksonville for beyond 3 cents lower than to Jacksonville proper, and likewise beyond Jacksonville proportional rates 1 cent lower than the locals. At the hearing protestants made no objection to this method of constructing rates to Florida and there is no evidence of record upon which to disapprove a practice which is in effect upon classes and commodities."

The second Southern Brick Case, 155 I.C.C. 730, was a re-opening of the first case for further hearing with respect to rates for distances in excess of 150 miles, and with respect to the commodity definition and minimum weight on common brick for all distances. It resulted in removing the 150 mile limitation and extending the 80% scale to all distances. In disposing of this case the Commission made no reference to the Jacksonville combination. However, of the tariff rates under review there it said: "Pursuant to our findings in the title case the carriers established the rates prescribed, including the 80 per cent. basis on common brick for distances not in excess of 150 miles."

Appellants and appellees each with apparently equal confidence, rely on these reports and findings, and the other Commission cases each cites as supporting their respective contentions.

In its report in the case under review, the Commission called attention to the fact that the findings and orders in the Southern Brick Case made no specific mention of the use in rates to the Florida peninsula, of the Jacksonville combination; that its use was specifically disapproved in the Dann-Gerow Case in July, 1930 and a specific basis of rates on brick from all points in the South to certain points in the Florida peninsula was then prescribed.

It called attention, too, to the fact that in the Columbus Case, 185 I.C.C. 639, it had found that in a long line of cases the Jacksonville combination had been consistently condemned. It said that that case, and especially the Dann-Gerow Case, served to put the defendants on notice that rates resulting from the use of that method were unreasonable, and that they would be answerable in damages for its continued use. It thus appears both from the effective date of the reparation order, November, 1930, and from the views expressed in its report, that the Commission was of the opinion that though the use of the Jacksonville combination had not been prescribed by it, but only permitted, reparation should be awarded not from the date the rates complained of took effect, but from a date when, after the going into effect of the order in the Dann-Gerow Case, disapproval

by the Commission of the use of the Jacksonville combination in rates on brick to Florida peninsula points had been brought home to the carriers.

None of the parties here make any controversy over the effective date of the order. The contentions made are general. The case centers and turns here upon whether reparation could be granted at all as to the assailed rates. If it could, the judgment was wrongly entered for appellants, and should be reversed. If it could not, the judgment was rightly entered and should be affirmed.

We do not agree with appellants that the proceedings in the Brick Cases and the reports and orders issued out of them were general in their nature, like those discussed in the case of Texas & P. R. Co. v. Louisiana Oil Refining Corporation, on which they rely. We think they represent instances of specific rate making, and that if the carriers had put into effect the rates the Commission prescribed the Commission could not, having legislatively fixed the rate by a later order of reparation effective as of their effective date, declare them unreasonable now for then.

But we agree with appellants that the finding and judgment against them were wrong, for neither were the January, 1930, rates as to which reparation was awarded, in our opinion Commission-made, nor did the Commission, by its order entered some three years later, undertake now for then to make the reparation order effective as of the date the rates went into effect. It is one thing to point to an order of the Commission directing the use of the Jacksonville combination in making up the distance tariffs ordered on brick, and it is quite another to point to a report in which its use is incidentally mentioned, with the statement "that at the hearing the protestants made no objection to this method and there is no evidence of record to disapprove a practice which is in effect upon classes and commodities." What the Commission prescribed in the Brick Cases was rates based upon distance schedules. In none of the cases were the carriers ordered to use the Jacksonville combination. In none of them was the use of that combination ever in issue so as to require or receive a finding that its use was reasonable or unreasonable. In none of them was such a finding made. Nothing in either of the cases from the Ninth Circuit on which

appellees rely at all sustains them. In those cases, particularly in the first, the court was at pains to point out that there was a definite finding that the rates had not been shown to have been unreasonable and that under the decisions this was in effect a finding that they were reasonable. Here there was neither a finding that the use of the Jacksonville combination was reasonable, nor that it had not been shown to have been unreasonable. It was merely stated in the report that nothing had been shown which would authorize its disapproval. What the Commission prescribed was a schedule of rates based on distances. What the carriers in January, 1930, published was a quite different schedule. It was one based on the use of the Jacksonville combination which had been theretofore many times condemned, by the Commission, and which was then under attack in the Dann-Gerow Case, in which practically all of the defendants in this case were parties, as to brick rates to points in the Florida peninsula.

Under these circumstances, we think it quite plain that the action of the Commission in awarding reparation was with jurisdiction and was just. Texas & P. R. Co. v. Louisiana Oil Refining Corporation (C.C.A.) 76 F.(2d) 465, 469.

The judgment is reversed, and the cause remanded for further proceedings herein.